599 So.2d 858 (1992)
STATE of Louisiana
v.
Pennie WIGLEY and Robert Earle Higginbotham.
Nos. K91-526, K91-734.
Court of Appeal of Louisiana, Third Circuit.
May 4, 1992.
*859 John Holdridge, MS & LA Capital Trial Asst. Prjt., New Orleans, Thomas L. Lorenzi, Lorenzi & Sanchez, Lake Charles, J. Michael Small, Alexandria, Rebecca L. Hudsmith, Shreveport, Nicholas J. Trenticosta, Loyola Death Penalty Resc. Ctr., New Orleans, for defendants.
F. Wayne Frey, Paul Reggie, Asst. Dist. Attys., Lake Charles, Barbara Rutledge, Asst. Atty. Gen., New Orleans, for plaintiff.
Before LABORDE, J., and MARCANTEL and COREIL, JJ. Pro Tem.[*]
JOSEPH E. COREIL, Judge Pro Tem.
This case is before the Court by writ of certiorari on remand from the Louisiana Supreme Court. The writ application concerns the request for payment of reasonable attorney's fees and expenses filed by four private attorneys who were appointed to represent indigent defendants charged with first degree murder.
Mark Delphin and David Dwight, both private attorneys, were court appointed to represent Robert Earle Higginbotham, a 16-year-old defendant charged with capital murder.[1] Alcide J. Gray and Anna R. Gray, both private attorneys, were appointed to represent Pennie Wigley, a 17-year-old defendant charged with capital murder.[2] The four attorneys were appointed *860 by the court from a list of non-volunteer attorneys.
During the pendency of the criminal prosecution, motions for payment of reasonable compensation and expenses were filed in these two prosecutions.[3]
The evidentiary hearings were consolidated and conducted on March 22, 1991[4]. This writ arises out of the denial of the request for payment.

HEARING ON THE MOTION
At the hearing, the chairman of the Calcasieu-Cameron Indigent Defendant Board, Walter Sanchez, testified about the funding and financing of the local indigent defender board (IDB). He stated that the four attorneys appointed by the court from the list of non-volunteer attorneys have not been paid for their services and will not be paid in the future. In fact, Sanchez testified, all non-volunteer attorneys appointed by the court since the latter part of 1990 would not be paid by the IDB for their services. As far as Sanchez knew from his years of service to the IDB, non-volunteer attorneys appointed by the courts to represent indigent defendants have never been paid, due to the inadequate funding.
After the hearing, the motions were denied. Counsel for the attorneys objected to the ruling and gave notice of intent to seek supervisory writs.

DISCUSSION
Relators assert various constitutional violations in their assignments of error.[5] There is no need for this Court to address each assignment of error. This case turns *861 on the violation of an attorney's right to substantive due process. Substantive due process, as it relates to matters here, primarily protects against an oppressive interpretation of the law and is in many ways similar to the "taking" clause of the state and federal constitutions. See La. CONST., art. 1, § 4 and U.S. CONST. amend. V.

I.
The United States Constitution, Amendment VI, provides the right of an accused to have the assistance of counsel. The Louisiana Constitution art. 1, § 13, further provides the appointment of counsel for indigent defendants charged with an offense punishable by imprisonment. This article also provides:
"The legislature shall provide for a uniform system for securing and compensating qualified counsel for indigents."
The only justifiable objective of this portion of the article is obvious. Attorneys appointed to represent indigent defendants in criminal proceedings are entitled to compensation. To require the services of an attorney to defend without fee is in conflict with Section 13 of Article 1 of the Louisiana Constitution.
The traditional view held by the courts has been that when an attorney is admitted to practice law, he takes on an obligation to render his services to indigents without compensation. This principle, once so firmly established in the history of the courts and the legal profession, is now categorically rejected by numerous state supreme court decisions when the services are to indigent defendants in capital murder cases.[6]
In State v. Clifton, 247 La. 495, 172 So.2d 657 (1965), the Louisiana Supreme Court held that a court has the inherent power to require an attorney, as an obligation burdening the attorney's privilege to practice and to serve as an officer of the court, to represent an indigent without compensation "so long as the burden is not oppressive." 172 So.2d, at 667. The Court held that the compensation must be provided if the "task imposed upon [counsel] is so onerous that it constitutes an abusive extension of their professional obligations." Id. at 668.
When an attorney is required to donate time (his or her "stock in trade") to subsidize a defense, the attorney is being deprived of property in the form of money. When the burden imposed is excessive to the extent that it is confiscatory, this taking of his property is constitutionally unacceptable.
The practice of maintaining indigent defender boards as provided for under La. R.S. 15:145 imposes upon the indigent defender boards the obligation to pay an attorney who undertakes the defense of indigents. Furthermore, this requirement does not limit payment of compensation to appointed lawyers who are not on a volunteer panel or list. See State v. Bryant, 324 So.2d 389 (La.1975). More recently, in the case decided by the Second Circuit, In re Compensation for Indigents' Criminal Defense. State of Louisiana v. Clark, 580 So.2d 1058 (La.App. 2 Cir.1991), the Court affirmed the trial court's denial of motions seeking reasonable compensation and expenses. In affirming, the Court noted that the attorneys had not shown that the amount of time expended was so "unduly burdensome so as to amount to an unconstitutional taking, deprivation, or involuntary servitude." Id. at 1061. This recent interpretation further indicates the trend and inclination to compensate indigent defense counsel under certain circumstances.
In addition, the Court noted that in some circumstances, it is within the court's power to order compensation from another branch of government. The judicial branch has wide ranging inherent powers to compel the governmental body it deems appropriate to reasonably compensate and reimburse *862 court appointed counsel, and this power cannot be limited by any other branch of government. See State in the Interest of Johnson, 475 So.2d 340 (La. 1985).
An interesting parallel to this case is State in Interest of HLD v. CDM, 563 So.2d 360 (La.App. 3 Cir.1990), where, in the context of termination of parental rights cases, we stated:
"Ordering attorneys to serve without compensation is hardly practical, especially considering modern economic conditions."
If this statement is true with respect to attorneys appointed to represent parents facing the loss of their children, then it should even be more true with respect to attorneys appointed to represent defendants facing the loss of their lives. The principles are consistent, despite the different type of legal representation.

II.
We first make the determination that the court appointments, from a non-voluntary list, to defend a person charged with a capital offense, without compensation, is, in itself, onerous and oppressive. Given the extreme nature of the burden of a capital case appointment on the court appointed lawyer, it is unrealistic to conclude otherwise. Testimony by Ms. Michele Fournet, an expert in capital defense, enlightened the court as to the financial and emotional burden of defending a capital murder case. According to Ms. Fournet, an average of five hundred hours is spent handling a capital case. This in itself has serious negative consequences on the law practice. Involvement in a capital case requires the attorney to forego profitable employment by other clients. By the same token, this involvement has a direct and substantial adverse impact on the attorney's ability to render competent counsel to existing clients, as well as draining his financial resources.
Furthermore, as a practical matter, the defense attorney in a capital case has the burden to show reasons why the client's life must be spared. No case can be more demanding of a lawyer's skill and time. The representation of a citizen facing the sanction of execution is the most awesome responsibility that a lawyer will shoulder in his or her legal career. The skills must encompass, at the least, a working knowledge of the complex constitutional, procedural, and scientific developments that are necessarily concomitant to any criminal case, particularly a capital case. The burden and costs of representing indigent defendants should be a public responsibility and not the responsibility of a select group of the bar.

CONCLUSION
As of the date of the hearing, March 22, 1991, Mr. Delphin had two uncompensated court appointments, and had devoted over one hundred and forty hours to Mr. Higginbotham's case alone. According to the Loyola Death Penalty Resource Survey, submitted by the Loyola Death Penalty Resource Center as amicus curiae, the average private practitioner in Louisiana charges $118 per hour.[7] Therefore, excluding his case-specific expenses, which Mr. Delphin testified amounted to $550.45, Mr. Delphin lost $16,520 as a direct result of his representation of Mr. Higginbotham.
As of the date of the hearing, Mr. Gray had three uncompensated court appointments and had devoted over eighty-three hours to Ms. Wigley's defense. Therefore, excluding his case-specific expenses, Mr. Gray lost $9,793 as a direct result of his representation of Ms. Wigley. Moreover, Mr. Gray is not financially able to represent Ms. Wigley as, at the time of the hearing, Mr. Gray was bankrupt. Furthermore, he had no associates employed at the time and had a caseload that numbered two hundred.
*863 As of the date of the hearing, Ms. Gray had three uncompensated court appointments, and had devoted over eighty-three hours to Ms. Wigley's case. Therefore, excluding her case-specific expenses, Ms. Gray lost $9,000 as a direct result of her representation of Ms. Wigley. Additionally, Ms. Gray's practice is primarily environmental and corporate law.
Mr. Dwight devoted very little time to Mr. Higginbotham's defense. He conceded at the hearing that the time he spent in Mr. Higginbotham's defense was principally making some phone calls, and consequently, we do not feel that he should be compensated as his efforts were minimal.
Although we have no evidence before us as to the total number of hours devoted to the case, we note that a guilty plea from Mr. Higginbotham was not accepted until April 17, 1991, and from Ms. Wigley on April 29, 1991. We find that not compensating these attorneys constitutes an abusive extension of their professional obligations, and we therefore order the Indigent Defender Board to compensate Mr. Gray, Ms. Gray, and Mr. Delphin the maximum amount paid to appointed voluntary attorneys. According to the record, voluntary attorneys are paid a $1,000 cap to represent a capital murder defendant.
WRIT MADE PEREMPTORY:
The trial court's denial of the motion for reasonable compensation is reversed; and,
IT IS ORDERED THAT the Indigent Defender Board pay relators, Alcide Gray, Anna R. Gray, and Mark A. Delphin, the maximum amount allowable according to law.
LABORDE, J., concurs and assigns written reasons.
MARCANTEL, J., concurs for reasons assigned.
LABORDE, Judge, concurring.
I respectfully concur.
I agree with the decision to compensate those volunteer attorneys appointed to represent indigents in capital murder trials, however, I would not limit such compensation to the statutory cap of $1,000.00 as mandated by La.R.S. 15:145 et seq. No compensation as well as compensation as low as $1,000.00 for representation of a capital murder defense is oppressive, and in my opinion, amounts to an unconstitutional taking of the attorney's property. An attorney's legal education is a distinct investment-backed expectation. See, Penn Central v. New York City, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). An attorney should not be forced to forego representation of paying clients in order to conduct a proper defense in a capital murder defense case to the extent the attorney falls into economic hardship. Expert testimony in this case indicates a capital murder defense generally requires an average of 500 hours of work given that the trial is divided into two stages: the guilt phase and the sentencing phase. Furthermore, such a defense, if properly conducted, is generally so taxing on the attorney's law practice that the attorney must choose between properly representing the indigent and representing his own clients.
Because most attorneys cannot afford to forego representation of their paying clients, a court-appointment to represent an indigent often forces the attorney to violate the Rules of Professional Conduct he has sworn to uphold. Expert testimony of Professor Warren Mengis, ethics professor at the LSU Law Center, indicates uncompensated attorneys will probably not give sufficient attention to their capital court-appointments or their regular cases, thus violating Rule 1.3. This rule states in pertinent part: "A lawyer shall act with reasonable diligence and promptness in representing a client." Professor Mengis further testified an attorney compelled to represent an indigent in a capital murder case would also, in all probability, be forced to violate Rules 1.4 and 1.7. Rule 1.4 provides: "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information". Rule 1.7 provides: "A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities *864 to another client to a third person ... unless the lawyer reasonably believes the representation will not be adversely affected..." Any capital appointment requires so much of an attorney's time that it is generally impossible for the attorney to represent his regular clients without his responsibility to that client being materially limited by the time he must devote to a capital murder defense. If an attorney is forced to neglect his regular clients as a result of a court-appointment, he cannot fulfill his ethical obligation to them. Likewise if the attorney is foregoing preparation for the indigent defendant's case in order to keep up with his private practice, he violates this ethical rule with respect to the indigent. Furthermore, criminal law is generally not an area of the law which a court-appointed attorney is familiar, and the attorney will have to work extra hard to properly represent the indigent which will cause him to further neglect his paying clients or do less than what is needed to properly represent the indigent defendant.
An attorney must uphold the Rules of Professional Conduct or risk losing his license to practice law. The evidence and expert testimony in this case indicates a noncompensated court-appointed attorney in a capital murder defense case is forced to choose between rendering ineffective assistance of counsel to the indigent defendant or risk violating these rules with respect to his regular clients. It is simply economically impossible in today's world for an attorney to maintain a stable private practice and earn a decent living while representing an indigent without compensation for a case generally requiring an average of about 500 hours. Reasonable compensation for these court-appointments will eliminate these problems and conflicts for court-appointed attorneys. While I commend the traditional view that attorneys as officers of the court have an ethical obligation to represent indigents, I do not believe such a view is realistic when applied to representation of an indigent in a capital murder trial. This type of representation requires a thorough knowledge of the very complicated criminal, constitutional, and procedural laws applicable to the case. Additionally, a thorough knowledge of today's modern scientific and technical developments, such as DNA testing which usually accompany a capital murder trial, may be necessary. Given the amount of time an attorney must invest to properly represent an indigent charged with capital murder, the attorney must be compensated for his time, skill, and knowledge. To hold otherwise allows the State of Louisiana to shift the responsibility of indigent capital murder defense to a very small portion of the bar. This responsibility should not burden just a portion of the bar, but should be the burden of the entire state. I therefore believe noncompensation or compensation in the ridiculously low amount of $1,000.00 for over 500 hours of legal work is oppressive.
I do not adopt any opinion regarding compensation for representation of indigents of any other matter as this court was only asked to address the issue of whether an attorney appointed to represent an indigent in a capital murder trial should be compensated for his time and expenses. I concur with the majority that such attorneys should be compensated, however, I would extend this compensation beyond the statutory cap of $1,000.00. I believe such low compensation not only violates the Taking Clause of the Federal and Louisiana Constitutions, but also forces such attorneys to violate the Rules of Professional Conduct thereby placing their license to practice law in jeopardy.
BERNARD N. MARCANTEL, Judge Pro Tem., concurring.
I believe requiring attorneys to furnish uncompensated services not only denies indigent defendants the assistance of competent counsel but also deprives attorneys of valuable property rights. While I fully subscribe to the reasoning set forth in the majority opinion, I believe we should also note the legislature's failure to follow the Louisiana Constitution of 1974, Article I, § 13, which clearly mandates the legislature to provide for a uniform system for securing and compensating qualified counsel for indigents.
*865 Surely no one can seriously argue that Louisiana Revised Statutes, Title 15, Section 146 provides a uniform system for funding the indigent defender boards. That system for funding makes the funds dependent upon the collection of special costs which are to be assessed for violations of certain state statutes and parish and municipal ordinances. The amount collected varies from court to court, except for those courts that are entirely exempt from collecting costs for the indigent defender boards. Thus, it is apparent that indigent defender boards could prosper in heavily populated jurisdictions and be unable to function in sparsely populated areas.
I respectfully suggest that the indigent defender system, as presently funded, is unconstitutional.
I foresee serious constitutional problems in administering our criminal justice system unless the legislature acts promptly to provide a uniform funding system.
NOTES
[*] Judge Bernard N. Marcantel and Judge Joseph E. Coreil, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judges Pro Tempore.
[1] State of Louisiana v. Robert Earle Higginbotham, Docket No. 9603-90, 14th Judicial District Court, Parish of Calcasieu.
[2] State of Louisiana v. Pennie Wigley, Docket No. 7563-90, 14th Judicial District Court, Parish of Calcasieu.
[3] Both defendants entered into a plea bargain after the March 22, 1991 hearing. Defendant Higginbotham plead guilty to manslaughter on April 17, 1991; defendant Wigley plead guilty to manslaughter on April 29, 1991. No motions for appeal have been filed. Therefore, the defendants' convictions are final and no further services are required by the court appointed attorneys.
[4] A separate opinion will be rendered in the consolidated case of State of Louisiana v. Pennie Wigley and Robert Earle Higginbotham, 599 So.2d 865 (La.App. 3 Cir.1992).
[5] "1. The lower court erred in compelling the court-appointed attorneys in these cases to represent indigent defendants without reasonable compensation and reimbursement for all reasonable expenses because such compelled representation, particularly in capital cases, is contrary to precedent of the Louisiana Supreme Court and, in capital cases, constitutes an abusive extension of the attorneys' professional responsibilities.

2. The lower court erred in refusing to order the governmental body it deemed appropriate to reasonably compensate and reimburse for all reasonable expenses the court-appointed attorneys because the State's failure to provide reasonable compensation and full reimbursement contravenes the doctrines of separation of powers and judicial independence.
3. The lower court erred in compelling the court-appointed attorneys to represent indigent defendants without reasonable compensation and reimbursement for all reasonable expenses because such compelled representation, particularly in capital cases, deprives the attorneys of due process of law.
4. The lower court erred in compelling the court-appointed attorneys in these cases to represent indigent defendants without reasonable compensation and reimbursement for all reasonable expenses because such compelled representation, particularly in capital cases, constitutes a taking under the Constitutions of Louisiana and these United States.
5. The lower court erred in compelling the court-appointed attorneys to represent indigent defendants without reasonable compensation and reimbursement for all reasonable expenses because such compelled representation, particularly in capital cases, deprives the attorneys of equal protection of the law.
6. The lower court erred in compelling the court-appointed attorneys to represent indigent defendants without reasonable compensation and reimbursement for all reasonable expenses because such compelled representation, particularly in capital cases, constitutes involuntary servitude.
7. The lower court erred in compelling the court-appointed attorneys to represent indigent defendants without reasonable compensation and reimbursement for all reasonable expenses because such compelled representation, particularly in capital cases, violates the defendants' rights under the Louisiana Constitution to compensated counsel, and their rights under the Louisiana and United States Constitutions to effective assistance of counsel and due process of law.
8. The lower court erred in compelling the court-appointed attorneys to represent indigent defendants without reasonable compensation and reimbursement for all reasonable expenses because such compelled representation, particularly in capital cases, deprives defendants of their rights to equal protection of law."
[6] Arnold v. State of Arkansas, 306 Ark. 294, 302-303, 813 S.W.2d 770 (1991); State ex rel. Stephan v. Smith, 242 Kan. 336, 747 P.2d 816 (1987); Jackson v. State, 413 P.2d 488 (Alaska 1967); Smith v. State, 118 N.H. 764, 394 A.2d 834 (1978); State v. Rush, 46 N.J. 399, 217 A.2d 441 (1966); State v. Lynch, 796 P.2d 1150 (Okla.1990).
[7] "The Resource Center's Survey on Court Appointed Counsel in Capital Murder Cases was administered under the direction of undersigned counsel between April 11, 1991 and May 10, 1991. Over 200 private attorneys were asked to answer close ended questions regarding their appointments in capital cases; 38 qualified respondents completed surveys and the data was analyzed using established methods of statistical analysis."