624 So.2d 425 (1993)
STATE
v.
Pennie WIGLEY.
STATE
v.
Robert Earle HIGGINBOTHAM.
No. 92-KK-1503.
Supreme Court of Louisiana.
September 7, 1993.
Concurring Opinion September 9, 1993.
*426 Alcide J. Gray, Gray & Spruel, Anna R. Gray, Mark A. Delphin, Thomas L. Lorenzi, Lorenzi & Sanchez, John Holdridge, for applicant.
Richard P. Ieyoub, Atty. Gen., Robert R. Bryant, Dist. Atty., Paul P. Reggie, Frederick W. Frey, Asst. Dist. Attys., for respondent.
G. Paul Marx, amicus curiae, for Public Defender 15th JDC.
Paulette Dartez, amicus curiae, for Calcasieu Parish 14th JDC.
Christopher M. Trahan, amicus curiae, indigent defender 14th JDC and indigent defender 38th JDC.
Harry S. Hardin, III, amicus curiae, for Louisiana State Bar Ass'n.
Concurring Opinion by Justice Dennis September 9, 1993.
CALOGERO, Chief Justice.[*]
We granted writs in this case to decide whether the uncompensated appointment of attorneys to represent indigent criminal defendants in unrelated cases, consolidated in this Court, violated the attorneys' constitutional rights.
Uncompensated representation of indigents, when reasonably imposed, is a professional obligation burdening the privilege of practicing law in this state, and does not violate the constitutional rights of attorneys. State v. Clifton, 247 La. 495, 172 So.2d 657 (1965). However, because of the changing environment in the practice of criminal law *427 and the legal profession generally in recent decades, the practices the Clifton court allowed as no more than a permissible burden, now, in some cases, "constitute an abusive extension of [attorneys'] professional obligations" which Clifton lamented. 172 So.2d at 668. We find that the instant appointments were unreasonable and oppressive, in retrospect at least, because the attorneys were not assured reimbursement, nor have they yet been reimbursed for their properly incurred expenses, including costs and overhead. Additionally exercising our supervisory jurisdiction, we order that the attorneys be reimbursed.[1]
Pennie Wigley and Robert Earle Higginbotham were each charged with capital murder in unrelated cases in the 14th Judicial District, Calcasieu Parish, for homicides arising out of separate armed robberies. Since both defendants are indigent, attorneys Alcide L. Gray and Anna R. Gray were appointed to represent Wigley, and attorneys Mark A. Delphin and David F. Dwight to represent Higginbotham. The attorneys' names had appeared on a list of nonvolunteer attorneys.[2] Three of these attorneys were civil practitioners with little criminal law experience. The 14th Judicial District Indigent Defender Board informed the attorneys that it would not be able to pay them for their services or reimburse them for their out-of-pocket expenses. Before trial, the attorneys filed a motion for payment of expenses and compensation. After a hearing, the trial court denied the motion. Each of the defendants eventually pled guilty to manslaughter and was sentenced to prison terms. The attorneys' writ applications from the trial court ruling denying their motion for payment and compensation prompted this Court to grant writs and remand the case to the court of appeal for briefing and argument. State v. Higginbotham and Wigley, 592 So.2d 394 (La.1992). The court of appeal thereupon held that to require an attorney "to defend without fee" violates an attorney's right to substantive due process and violates La. Const. art. I, § 13.[3] The court of appeal then determined that $1,000 is the maximum payment allowable and ordered that the attorneys be paid $1,000 each. State v. Wigley, 599 So.2d 858 (La.App. 3d Cir.1992).
Judges have been appointing attorneys to represent indigent defendants in Louisiana for over 100 years. See, e.g., State v. Simmons, 43 La.Ann. 991, 10 So. 382 (1891). Although the practice has occasioned some controversy, in general the bar has willingly shouldered this burden. When this Court *428 last addressed the issue directly, we endorsed the view that
[t]he professional obligations assumed by attorneys in this State require that a reasonable amount of time and effort be devoted to promoting the cause of justice, including the defense of indigent accused without compensation. The high purpose and traditions of the legal profession require that this burden be shouldered by its members. So long as the burden is not oppressive and is fairly shared among the members of the bar to which they belong there is no cause for complaint.
State v. Clifton, 172 So.2d at 667. We see no reason to depart from the principle announced in Clifton. No provision of the state or federal constitutions requires us to do so. See, e.g., Hurtado v. United States, 410 U.S. 578, 589, 93 S.Ct. 1157, 1164, 35 L.Ed.2d 508 (1973) (attorneys' service to indigent "a public duty already owed" for which no compensation is due); United States v. Dillon, 346 F.2d 633 (9th Cir.1965), cert. denied, 382 U.S. 978, 86 S.Ct. 550, 15 L.Ed.2d 469 (1966) (involuntary uncompensated representation of an indigent involved no taking under 5th Amendment); State in Interest of Johnson, 475 So.2d 340 (La.1985) (under La. Const., courts have inherent authority to appoint an attorney "to represent an indigent, with or without compensation, as an obligation burdening his privileges to practice and to serve as an officer of the court"); State v. Bryant, 324 So.2d 389 (La.1975) (uncompensated lawyers representing indigents are not "deprived of property without due process and equal protection" or "forced into involuntary servitude"); State v. Doucet, 352 So.2d 222 (La.1977) (uncompensated lawyer's rights under Fifth and Fourteenth Amendments not violated).
However, the practices this Court approved in Cliftonrequiring the appointed uncompensated attorneys "to bear the stenographic, secretarial, and out-of-pocket expense required" in connection with an assigned representationare, by now, outmoded, and no longer comport with the requirement that the burden placed on attorneys be "reasonable" and "not oppressive." First, according to testimony at the district court, as the practice of criminal law has become more specialized and technical, and as the standards for what constitutes reasonably effective assistance of counsel have changed, the time an appointed attorney must devote to an indigent's defense has increased considerably. This is especially true in capital cases like these. The attorneys in these two cases presented testimony which established that three of the four of them had spent between 80 and 140 hours each, even before the hearing which was held on the motion for compensation. Had the cases proceeded through trial, they no doubt would have spent many more hours on them. Second, according to testimony at the district court, as the practice of criminal law has become more specialized and technical, the funds required for investigation, experts, and scientific tests have increased considerably. The attorneys testified that they had incurred hundreds of dollars in out-of-pocket expenses, again, even before the hearing on the motion for compensation. Finally, according to testimony at the district court, the practice of law in general has changed enough so that simply maintaining a modern office requires a significant level of expenditure. One of the attorneys introduced evidence that his overhead costs[4] prorated over each of his billable hours in a year was about $30 per hour.
To require that attorneys represent indigents with no recompense while bearing the expenses of the representation, when the attorneys must maintain their own practices and continue to meet their other professional and financial obligations in today's changed legal marketplace, "is so onerous that it constitutes an abusive extension of their professional obligations." Clifton, 172 So.2d at 668. *429 This institutionalized "abusive extension" cannot be perpetuated. As was said in Smith v. State, 394 A.2d 834, 838 (N.H.1978), "the profession must be relieved of this burden and ... the burden must pass to the citizens."
However, we also believe "that the bar should continue to contribute something more" to the defense of indigents than the citizenry in general. Id. Time and the changing practice of law have not altered the fact that "[t]he duty of the lawyer to serve is both traditional and specific." State v. Campbell, 324 So.2d 395 (La.1975). Cf. State v. Robinson, 123 N.H. 665, 465 A.2d 1214 (1983) (what appointed attorneys receive "need not be equal to that which an attorney would expect to receive from a paying client, but should strike a balance between conflicting interests which include the ethical obligation of a lawyer to make legal representation available, and the increasing burden on the legal profession to provide counsel to indigents"); State v. Lynch, 796 P.2d 1150 (Okl.1990) ("a lawyer's calling is different from that of other professions ... [and] a lawyer is weighted with responsibility which is uncommon to the ordinary professional"); State ex rel. Stephan v. Smith, 242 Kan. 336, 747 P.2d 816 (1986) ("the emerging view is that the responsibility to provide ... [for indigent defense] is a public responsibility that is not to be borne entirely by the private bar").
We find that in order to be reasonable and not oppressive, any assignment of counsel to defend an indigent defendant must provide for reimbursement to the assigned attorney of properly incurred and reasonable out-of-pocket expenses and overhead costs. However, a fee for services need not be paid, as long as the time the attorney must devote to cases for which he does not receive a fee does not reach unreasonable levels. What is unreasonable in this context is to be determined by the trial judge in the exercise of his discretion. Such a system will strike a balance between the attorney's ethical duty to provide services pro bono publico and his or her practical need to continue to perform his or her other obligations.
We fully appreciate that the sources of funds from which appointed counsel may be reimbursed are limited. In future cases it will therefore be the district judge's responsibility to determine before he appoints counsel that funds sufficient to cover the anticipated expenses and overhead are likely to be available to reimburse counsel in the manner outlined above, whether the funds come from the Indigent Defender Board, from the state, from one court fund or another, from the local government subdivision pursuant to La. Rev.Stat.Ann. § 15:304 (West 1992), or from any other available source. If the district judge determines that funds are not available to reimburse appointed counsel, he should not appoint members of the private bar to represent indigents.
We realize that this solution may impair the functioning of the indigent defense system in those judicial districts which rely substantially on assigned uncompensated counsel. However, budget exigencies cannot serve as an excuse for the oppressive and abusive extension of attorneys' professional responsibilities. As we noted in State v. Peart, 621 So.2d 780 (La.1993), "[i]f legislative action is not forthcoming and indigent defense reform does not take place, this Court, in the exercise of its constitutional and inherent power and supervisory jurisdiction, may find it necessary to employ the more intrusive and specific measures it has thus far avoided.... We decline at this time to undertake these more intrusive and specific measures because this Court should not lightly tread in the affairs of other branches of government and because the legislature ought to assess such measures in the first instance." Slip op. at 18. (Citations omitted.)

Decree
We affirm the court of appeal judgment insofar as it held that appointing attorneys without reimbursement for expenses constitutes an unreasonable extension of their professional obligations. We reverse the court of appeal decision insofar as it held that to require an attorney to defend without fee violates an attorney's right to substantive due process and violates La. Const. art. I sec. 13. We also reverse the court of appeal's *430 order that these attorneys be paid only $1,000.[5] We remand this case to the district court with instructions to hold a hearing at which the attorneys may present evidence to establish their reasonable overhead costs and reasonable expenses incurred in the course of the assigned representation. The district judge is to exercise sound discretion and set the level of reimbursement to these attorneys in conformance with the principles set out above, and order payment from such funds as are available.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART; CASE REMANDED TO THE DISTRICT COURT.
DENNIS, J., concurs with reasons.
HALL, J., concurs with additional reasons.
WATSON, J., concurs only to add the observation that payment of overhead should be made sparingly.
LEMMON, J., joins in the opinion and in the concurring reasons assigned by Hall, J.
HALL, Justice, concurring.
I agree with and support the well-written majority opinion. Remand to determine the attorneys' overhead costs and reasonable expenses and to order reimbursement thereof is an appropriate disposition of these matters where the capital cases were terminated by plea bargains at relatively early stages of the proceedings.
I write to state my view that appointment to represent an indigent defendant in a capital case without fee or compensation for the attorney's time is, virtually per se, "so onerous that it constitutes an abusive extension of [an attorney's] professional obligations." In addition to reimbursement of out-of-pocket expenses, an attorney appointed to represent a defendant in a capital case should be paid a fee sufficient to cover the attorney's overhead and some reasonable compensation for the attorney's time, as may be determined by the trial judge.
DENNIS, Justice, concurring.
I respectfully concur in the majority opinion's holding that "any assignment of counsel to defend an indigent defendant must provide for reimbursement to the assigned attorney of properly incurred and reasonable out-of-pocket expenses and overhead costs." Op., page 429. However in a capital case an attorney should also receive a reasonable fee for his services and time.
Representing a defendant who faces execution is the most awesome responsibility an attorney will undertake in his professional career. Adding to this responsibility is the more complex nature of practicing criminal law today in regards to both constitutional and procedural issues. In addition, there is an increased need for complex scientific and psychological evidence in today's capital trial. Representing a defendant in a capital case requires literally hundreds of hours of the attorney's time and requires the attorney's utmost attention and ability. Furthermore the weight of such a responsibility surely infects every part of the attorney's daily life. To place this burden on an attorney without the concomitant compensation that should accompany such a burden is simply unfair to the attorney and is intrinsically an abusive extension of the attorney's professional obligations.
The United States Supreme Court held in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) and its progeny, that the State is constitutionally required to provide indigent defendants with counsel. *431 The Court did not hold that it is the bar's constitutional duty to provide indigent defendants with counsel. While the bar does have a professional obligation to provide their services, and courts have the inherent power to appoint attorneys with or without compensation since they are officers of the court, State in Interest of Johnson, 475 So.2d 340 (La. 1985), when the State seeks to end a human being's life by executing him, the State must be willing to pay, at the very least, to ensure that the scales of justice are weighted evenly. Refusing to compensate an attorney for his services in a capital case fails to meet this responsibility. "The relationship between an attorney's compensation and the quality of his or her representation cannot be ignored." White v. Board of County Comm'rs., 537 So.2d 1376, 1380 (Fla.1989). See also Jewell v. Maynard, 181 W.Va. 571, 383 S.E.2d 536, 546 (1989); Honore v. Washington State Bd. of Prison Terms and Paroles, 77 Wash.2d 660, 466 P.2d 485, 496 (1970) (en banc); Gilbert & Gorenfeld, The Constitution Should Protect EveryoneEven Lawyers, 12 Pepp. L.Rev. 75, 86-90 (1984); Hunter, Slave Labor in the Courts, 74 Case & Com. No. 4 (July-August 1969) at 8; Comment, Reimbursement of Expenses of Appointed Counsel, 26 La.L.Rev. 695 (1966) (citing 1 Silverstein, Defense of the Poor 16 (1965)). An uncompensated attorney is forced to decide how much time he can spend on the appointed case rather than on the paying clients' cases, on the basis of its economic feasibility in relation to keeping his or her practice open. Furthermore, the magnitude of the resources expended by the investigative and prosecutorial forces in capital cases so far exceeds the wherewithal of uncompensated, private attorneys as to amount to a per se, self-evident travesty of the adversarial system of justice.
Capital punishment is an extremely costly institution which places heavy monetary and non-monetary costs upon the legal system and the public. Its primary justification is the benefit that society in general receives by exacting retribution from capital murderers for their offenses. See State v. Perry, 610 So.2d 746 (La.1992). Therefore, the cost of implementing the capital punishment system is clearly a charge that should be paid by the public rather than the private bar. See State ex rel. Stephan v. Smith, 242 Kan. 336, 747 P.2d 816, 841 (1987); Smith v. State, 118 N.H. 764, 394 A.2d 834, 838 (1978); State v. Rush, 46 N.J. 399, 217 A.2d 441, 448 (1966). It is not appropriate for the government to finance a major component of the cost of the public's capital punishment system by requiring extreme pecuniary sacrifices of a few individual attorneys. The burden imposed on the relatively few attorneys called upon to handle such cases far exceeds the incidental professional burdens that an attorney should be expected to assume with his or her privilege of practicing law. For the State to pass its burden of providing counsel to indigent defendants, over to the bar, without compensation, is, at least in capital cases, a per se abusive extension of the attorney's professional obligations. It matters not whether the case goes to trial or is pleaded down to a lesser offense, for all of the above concerns are implicated the moment the attorney is faced with defending a person charged with a capital crime.
NOTES
[*] Cole, J., was assigned to participate in the decision of this case, which was argued before he retired.
[1] The issue of compensation for appointed criminal defense attorneys does not necessarily implicate the rights of a criminal defendant, and determinations of the adequacy of representation must be made independently from decisions on attorney compensation. See State v. Peart, 621 So.2d 780 (La.1993) (determinations on effectiveness of counsel to be made individually for each defendant). Cf. State v. Lynch, 796 P.2d 1150, 1156 (Okla.1990) (when considering the question of reimbursement due appointed attorneys, "the constitutional right of the indigent to counsel is not at issue"); State ex rel. Stephan v. Smith, 242 Kan. 336, 747 P.2d 816 (1987) ("[s]imply because the system could result in the appointment of ineffective counsel is no reason to declare the system unconstitutional; those rare cases where counsel has been ineffective may be handled and determined individually"); Wilson v. State, 574 So.2d 1338 (Miss.1990) ("[t]he argument concerning the ineffective assistance of counsel is better decided on a case by case basis").
[2] La.Rev.Stat. § 15:145(A) (West 1992) provides that each of the state's Indigent Defender Boards "shall maintain a current panel of volunteer attorneys licensed to practice law in this state and shall additionally maintain a current panel of nonvolunteer attorneys under the age of fifty-five licensed to practice law in this state and residing in the judicial district." Attorneys are appointed from the nonvolunteer list only "[i]n the event of an inadequate number of volunteer attorneys." La.Rev.Stat.Ann. § 15:145(B)(1)(a) (West 1992).
[3] Article I § 13 provides:

When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel. In a criminal prosecution, an accused shall be informed of the nature and cause of the accusation against him. At each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with a crime punishable by imprisonment. The legislature shall provide for a uniform system for securing and compensating qualified counsel for indigents.
[4] Overhead costs "include the cost of office, library, equipment, supplies, professional liability insurance, and secretarial help, all of which would be utilized in serving as counsel for an indigent defendant." State ex rel. Stephan v. Smith, 747 P.2d at 837. Overhead is "all actual costs to the lawyer for the purpose of keeping his or her door open to handle [the appointed] case... pro rata." Wilson v. State, 574 So.2d at 1341. See also State v. Lynch, 796 P.2d at 1152 (computing attorneys' "indirect/overhead costs," on a hourly basis, based on attorneys' submissions).
[5] We find no support in the statutes for the court of appeal's holding limiting the compensation paid to the attorneys to $1,000. The statutes which established a $1,000 limit on the amount of compensation payable were repealed in 1981. See former La.Rev.Stat. §§ 15:141-43, repealed by Acts 1981, No. 873, sec. 4. The court of appeal thus erred in limiting compensation to $1,000. Even if a statute did provide for a cap on the amount payable to an attorney assigned to represent an indigent defendant, courts, in the exercise of their supervisory and inherent power, could authorize and require a higher payment. See State in Interest of Johnson, 475 So.2d 340 (La.1985). Cf. Arnold v. Kemp, 306 Ark. 294, 813 S.W.2d 770 (1991); Wilson v. State, 574 So.2d 1338 (Miss.1990) (statutes imposing fee caps, though not unconstitutional on their face, may be unconstitutional as applied, and courts may award amounts in excess of statutory limitations).