PAUL A. BONIN, Judge.
12The district judge appointed the Orleans Public Defenders Office and Derwyn Bunton, who is the District Defender, to act as counsel to Sherman Singleton, a prisoner, in his pending post-conviction proceedings. Mr. Bunton objected to the appointments on numerous grounds, filed a motion to withdraw, and ultimately applied to us to exercise our supervisory jurisdiction to review the matter.
In aid of our consideration of his application, we requested clarification from the district judge specifically about her appointment of Mr. Bunton. By her per curiam, she clarified that Mr. Bunton had not been appointed in his capacity as the District Defender for Orleans Parish but as a practicing attorney who shares in the professional obligations of lawyers to undertake the representation of the indigent.
*988 In further aid of our review, we directed the trial judge to establish an evidentiary record from which we could determine the status of the pending still-open evidentiary hearing on the post-conviction claim and by which Mr. Bunton could support with evidence his contentions that his appointment would result in a conflict of interest due to the earlier involvement in pretrial px*oceedings of a then-employee of the Orleans Indigent Defenders Program or that he has “good cause” under Rule 6.2 of the Rules of Professional Conduct to avoid the appointment.
In the meantime, we also directed that the district court’s entire record be filed with us. We granted, docketed the case for oral argument, and now find as a matter of law that that the trial judge erred by appointing the Orleans Public | .¡Defenders Office to represent Mr. Singleton in his non-capital post-conviction case. We also find that, because Mr. Bunton demonstrated “good cause” to decline the appointment in his personal capacity, the district judge abused her discretion in denying his motion to withdraw as Mr. Singleton’s counsel. Accordingly, we reverse the rulings denying the motion to withdraw filed by the Orleans Public Defenders Office and Derwyn Bunton and remand this matter for further proceedings, including the appointment of substitute counsel for Sherman Singleton.
We explain our decision below.
I
We begin generally with an overview of the proceedings as memorialized in the district court record and then turn specifically to the circumstances which gave rise to the district judge’s appointment of the district public defender’s office and of Mr. Bunton.
A
In 1990, Sherman Singleton was indicted for the second degree murder of Bruce Vappie. At his arraignment early in the new year, Jeffrey Smith, an employee of the office then known as the Orleans Indigent Defender Program (“OIDP”), was appointed to represent him. But, by March 11, 1991, Blake Williams, Mr. Singleton’s newly employed, counsel, was substituted as his attorney of record. In the summer, Kevin Boshea enrolled as an additional private attorney for Mr. Singleton. Mr. Boshea, however, withdrew from the representation in August 1991, and Mr. Williams continued alone in representing Mr. Singleton. From the time of arraignment up to the trial, several pretrial motions were filed and decided.
| ¿Trial by a jury of twelve commenced and concluded on October 16, 1991. The verdict of the jury was “guilty as charged.”
Mr. Williams timely filed a motion for new trial on Mr. Singleton’s behalf. The trial judge conducted an evidentiary hearing on the motion for new trial and denied it on April 3, 1992. On that same date, having waived delays, Mr. Singleton was sentenced to life-without-parole. A motion for appeal was timely filed. We affirmed his conviction and sentence. See State v. Singleton, 622 So.2d 874 (La.App. 4th Cir. 1993) (Table).
In August 2003, Clarke Beljean enrolled as an attorney for Mr. Singleton. The minutes show that on June 29, 2004, “the defense filed supplemental for post-conviction relief,” which was set for hearing one month later.[1] The hearing was postponed *989 and rescheduled several times. Another attorney, Lauren Williams, had also enrolled as Mr. Singleton’s counsel, but she withdrew in September 2004.
On October 21, 2004, Dwight Doskey, who was apparently retained by Mr. Singleton’s family, enrolled as counsel. Following numerous continuances at the request of Mr. Singleton’s counsel, the post-conviction hearing commenced on March 14, 2008; after hearing from one witness, Cassandra Cheatham, the hearing was recessed until April 18, 2008. For a variety of reasons, however, the hearing was not resumed until December 15, 2008, at which time testimony was received from Hans Sinha and Mr. Williams, the trial attorney.[2]
IfiThe minute entry for April 16, 2009, notes that “the court is waiting on one last piece of evidence to be provided.” The post-conviction hearing was then set to resume on May 15, 2009. Again for a variety of reasons," however, the' hearing was not resumed and on March 26, 2010, Mr. Doskey withdrew as Mr. Singleton’s counsel and the district judge appointed the Louisiana Appellate Project to represent Mr. Singleton. Apparently the Louisiana Appellate Project took no action on its appointment and, on February 7, 2011, the district judge appointed Kevin Chris-tianson to represent Mr. Singleton.
In October 2011, Mr. Christianson filed for a competency hearing. On December 13, 2011, the district judge, after hearing the opinions of two mental health professionals, found that Mr. Singleton was competent to assist his counsel in the post-conviction proceedings.
Mr. Singleton later filed a motion to recuse the district judge, which motion she denied on October 18,2013. Mr. Singleton sought supervisory review with us and with the Louisiana Supreme Court. We denied his application, but, importantly for our purposes, we directed the district judge, in view of Mr. Singleton’s competency, to conduct a hearing on his outstanding post-conviction relief application within sixty days. See State v. Singleton, unpub., 13-1619 (La.App. 4 Cir. 1/14/14), writ den. 14-0377 (La.10/31/14), 152 So.3d 146.
Between the time of our ruling and the Supreme Court’s action, Mr. Christianson was allowed to withdraw as Mr. Singleton’s attorney without objection from Mr. Singleton. On that same date, February 21, 2014, “the court appointed OPD” and, at Mr. Singleton’s request, stayed the proceedings pending the Supreme Court’s ruling on the recusal issue,
B
Jé
Despite the appointment of the Orleans Public Defenders Office (“OPD”), no action was taken in the district court. We became aware of the delay on August 18, 2015 because Mr. Singleton filed an application for a writ of mandamus with us to compel action, in the district court in accord with our previous directive. We granted the application, ordered the district judge to appoint new counsel, and rule on Mr. Singleton’s pending application within sixty days. See State v. Singleton, unpub., 15-0882 (La.App. 4 Cir. 9/3/15).
On September 8, 2015, a representative of OPD appeared before the district judge and advised that “Mr. Wayne” has been appointed to represent Mr. Singleton. At the status hearing the following date, the *990 district judge and the prosecutor learned for the first time that OPD had filed a motion to withdraw from the appointment on May SO, 201⅛ but had never presented the motion to the district judge.[3] At the same time, Mr. Bunton, the bearer of this news, objected to the appointment of the OPD or anyone in that office as counsel in collateral review proceedings. He also advised that “Mr. Wayne” was “erroneously assigned to this matter.”
A few days later, another representative of OPD appeared before the district judge for the ruling on the OPD’s motion to withdraw. The district judge explained that, in view of our order that she conclude the hearing and rule on Mr. Singleton’s pending application, she was denying the motion. And, besides denying the motion to withdraw, she was appointing “OPD and Derwyn Bunton, | ./personally” to represent Mr. Singleton. From those rulings, Mr. Bunton filed his application for supervisory writs, including his request that the district judge’s rulings be stayed pending our review.
2
Upon receipt of the application, we first ordered that the district court record, including the transcripts of proceedings held on eleven dates, be filed with us. We then extended, for the first time, the date by which the district judge must comply with our previous directive to rule on the post-conviction application; we also denied Mr. Bunton’s request for a stay of the proceedings. On November 10, 2015, we directed Mr. Bunton, as the relator, to furnish copies of his application and related materials to Mr. Singleton, and we directed our clerk to include the prisoner on the list of persons entitled to notification of proceedings before us.
On December 17, 2015, having received the previously ordered transcripts, we directed that they be furnished to the prisoner. We requested a supplemental per curiam from the district judge respecting clarification whether her appointment of Mr. Bunton as counsel to the prisoner was in connection with his duties and responsibilities as the District Defender, or if her appointment of him was unrelated to his public responsibilities and solely as a member of the bar personally eligible for pro bono appointment. She complied and clarified that it was limited to his role as a member of the bar eligible for pro bono appointment.
We also directed the district court to convene an appropriate status conference on-the-record in which Mr. Bunton and Mr. Singleton shall participate for the purpose of (1) identifying any evidentiary hearings in the PCR proceeding for which a transcript is not available, (2) identifying the witnesses who remain to be called for testimony in the post-conviction proceeding, (3) determining whether 18the prisoner’s ineffective-assistanee-of-counsel claim extends to Jeffrey Smith, Esq., or is limited to his retained counsel, Blake Williams, Esq., and (4) determining whether the pri- or involvement as a counsel to Mr. Singleton of now-Judge Laurie White merits a recusal hearing.
In addition, we directed the district judge to conduct an evidentiary hearing to permit Mr. Bunton to establish (1) the factual basis for his assertion that in order to represent the prisoner he must criticize the performance or conduct of Mr. Smith, (2) that Mr. Smith has been actually em *991 ployed at any time by the Orleans Public Defenders Office, (B) that the Orleans Public Defenders Office in legal contemplation succeeds to, and does not merely replace, the Orleans Indigent Defender Program, and, (4) that he has “good cause” under Rule 6.2 of the Rules of Professional Conduct to avoid the appointment.
We vacated the prior deadlines by which the district judge was ordered to rule on the post-conviction application because of unforeseen delays in connection with Mr. Bunton’s filing on behalf of Mr. Singleton a second motion to recuse Judge Pittman. The motion was referred to a different district judge and denied. And we ordered the production of the transcripts of the status conference and of the evidentia-ry hearing filed with us.
II
At the outset, and importantly for the purposes of our discussion in Part III, post, we acknowledge that a prisoner in a post-conviction proceeding enjoys no constitutional right to appointed counsel. See Coleman v. Thompson, 501 U.S, 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (“There is no constitutional right to an attorney in state post-conviction proceedings.”). But, on the other hand, we emphasize that once a “court orders an evi-dentiary hearing on the merits of a [post-conviction] claim,” it 19“shall appoint counsel for an indigent petitioner ...” La. C.Cr.P. art. 930.7 C.[4] Here, the evidentia-ry hearing was already underway when the district court first appointed counsel for Mr. Singleton. Thus, there is no question that Mr. Singleton has a statutory right to appointed counsel.
III
We turn now to first address the well-founded legal contention that the district judge is without authority to appoint the Orleans Public Defenders Office to represent Mr. Singleton in his post-conviction proceedings.
A
In 2007, the Louisiana legislature, in an attempt to satisfy the constitutional mandate requiring “a uniform system for securing and compensating qualified counsel for indigents,” see La. Const, art. 1, § 13,[5] implemented comprehensive statewide standards and guidelines for indigent de *992 fense through the Louisiana Public Defender Act (“Act”). See 2007 La. Acts 307, § 1 (eff. August 15, 2007) see also La. R.S. 15:141-184. The accompanying legislative findings provide, in relevant part, that the statewide public defender system is to be free from “undue political and judicial interference,...” La. R.S. 15:142 B(2). See also State v. Brasley, 09-1847 (La.8/24/09), 17 So.3d 941 (highlighting the autonomy afforded to the public defender’s office in providing indigent defense counsel without judicial interference). In accordance with this finding, both the Louisiana Public Defender Board and the individual district public defenders are given substantial latitude to determine the delivery of public defender services. See La. R.S. 15:147 and La. R.S. 15:161. Of course, this independence is subject to the. .inherent regulatory authority of the Louisiana Supreme Court and certain statutory and ethical obligations. See La. R.S. 15:147 A; La. Const, art. 5, § 5; Brasley, 09-1847, 17 So.3d 941. Generally then, .when a defendant is afforded indigent defense services, it falls to the chief public, defender, not the district court, to determine which of the staff attorneys will represent the accused. See generally La. R.S. 15:161 E.
I nB
A more in-depth reading of the Louisiana Public Defender Act supports Mr. Bunton’s argument that the appointment of the OPD to a non-capital post-conviction proceeding goes beyond statutory authority.
The Act specifically requires the appointment of a public defender “[i]n a capital case in which the trial counsel was provided to an indigent defendant and in which the jury imposed the death penalty” and must not only represent the accused on direct appeal, but also “in any state post-conviction proceedings,, if appropriate.” La. R.S. 15:178 (Appointment of appellate and post-conviction counsel in death penalty case); see also La. R.S. 15:169 (Representation of capital defendants). The foregoing provisions “are intended for the sole and exclusive purpose of providing legal services and related expenses for capital defendants who have been sentenced to death and are not intended to confer substantive or procedural rights not otherwise provided by law.” La. R.S. 15:182 (emphasis added). These are the only provisions contained in the Act which provide for public defender services in collateral review proceedings. Mr. Singleton, however, was not tried in a capital case, nor was the death penalty imposed. If the legislature desired to allow for the appointment of public defenders in non-capital post-conviction cases, it could have easily done so.
It' follows, therefore, that Mr. Singleton’s post-conviction case does not fall into a category for which the Louisiana Public Defender Act provides for public defender services. Consequently, we find that to the extent that the district judge appointed the OPD to furnish legal representation to Mr. Singleton in his non-capital post-conviction case, this constitutes legal error and must be reversed.

JlF

We next address whether that resolution precludes the appointment of Mr. Bunton in his personal capacity as a member of the Louisiana bar eligible for pro bono appointment, unrelated to, and regardless of, his status as District Defender of the OPD. Although we conclude that the legal - impediment to the appointment of the OPD does not extend to the employees of the OPD, including Mr. Bunton, in their personal capacities because of their professional ethical obligations, we nonetheless find that in this specific case the district *993 judge abused her discretion in not permitting Mr. Bunton to withdraw from the representation of Mr. Singleton. We reject Mr. Bunton’s claim that his appointment would violate conflict-of-interest rules but agree that he demonstrated “good cause” to avoid the appointment.
A
Mr. Bunton first claims that his appointment constitutes a conflict of interest, as Mr. Singleton was previously represented by Jeffrey Smith through the Orleans Indigent Defender Program, the office which preceded the OPD.
Dannielle Berger, the Director of Administration for OPD, testified without contradiction that OPD is in essence, the successor of OIPD, as OPD maintains all the previous case flies and documents, and retained the same employees and tax identification number. Ms. Berger also testified that Jeffery Smith worked for the OIDP from 1996 to 2006. She noted that OPD still has access to, and maintains, client files from the OIPD’s tenure.
A criminal defendant has a constitutional right to effective assistance of counsel pursuant to the Sixth Amendment to the United States Constitution and Article 1, § 13 of the Louisiana Constitution. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Peart, 621 So.2d 780, 783 (La. 1993). This encompasses the right to be represented by conflict-free counsel. See Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). Generally, a conflict of interest issue arises in cases of joint representation, where an attorney owes conflicting duties to other defendants. See Cuyler v. Sullivan, 446 U.S. 335, 351, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (Brennan, J., concurring); see also State v. Garcia, 09-1578, p. 37 (La.11/16/12), 108 So.3d 1, 28.
We do recognize that, for conflict of interest purposes, “Indigent Defender Boards are ... treated as the equivalent of private law firms to effectuate a defendant’s Sixth Amendment right to effective assistance of conflict-free counsel and the ethical obligation of an attorney associated with other lawyers in a firm to avoid representing a client when any one of them practicing alone would be prohibited from doing so....’” Garcia, 09-1578, p. 38, 108 So.3d at 28 (quoting State v. Connolly, 06-0540 (La.6/2/06), 930 So.2d 951, 954, n. 1); see also La. Rules of Professional Conduct, Rule 1.10(a). That notwithstanding, such representation does not rise to the level of a constitutional violation absent an “actual” conflict of interest, one which adversely affects counsel’s performance. See Mickens v. Taylor, 535 U.S. 162, 171, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002); Garcia, 09-1578, p. 45, 108 So.3d at 33.
As mentioned previously, the district court minutes reveal that Jeffrey Smith represented Mr. Singleton once, at arraignment, and did not appear on his behalf at any other time. And, subsequent to Mr, Smith’s withdrawal, it appears that Mr. Singleton employed only private counsel to represent him. Although Mr. Bun-ton claims that in order to raise and argue ineffective assistance of counsel he would be forced to attack the performance of a former member of his office, we find it unlikely that an ineffectiveness claim rests on the actions of counsel at 114arraignment. Moreover, according to the evidentiary hearing held on April 8, 2016, Mr. Smith’s employment with OIDP ended in 2006. Mr. Bunton did not begin his employment as District Defender until 2009. The lack of overlap in employment and Mr. Smith’s brief representation of Mr. Singleton suggests that no actual conflict exists which *994 would adversely affect Mr. Bunton’s performance.
B
Despite the lack of an actual conflict of interest, we find that Mr. Bunton has nevertheless demonstrated “good cause” under the circumstances presented why his continued personal appointment as a member of the bar eligible for pro bono appointment should not be upheld.
At the aforementioned evidentiary hearing on April 8, 2016, James Thomas Dixon, the chief public defender for the state, testified about the substantial workload of a district public defender and stated that, while some district defenders are permitted to have private practices, they are prohibited from utilizing public resources in furtherance of such. Mr. Dixon also testified that Mr. Bunton, as District Defender for Orleans Parish, is a full-time employee and is not allowed to have a private practice. Mr. Dixon expressed the unchallenged observation that if Mr. Bun-ton maintained a caseload of private clients and performed his duties as District Defender, he would not be able to do either “effectively.”
Mr. Bunton testified as well. He testified that he works full-time as the District Defender and maintains a staff of approximately 100 people. He stated that he does not maintain a private practice nor does he possess any resources apart from those at the OPD, such as personal malpractice insurance or his own office supplies.
Iigl
As a general rule, attorneys barred in the state of Louisiana have a professional obligation to serve and represent indigent clients “unless the appointment is unreasonable and oppressive.” State v. Clark, 624 So.2d 422, 424 (La.1993) (citing State v. Clifton, 247 La. 495, 172 So.2d 657 (1965)). See also La. Rules of Professional Conduct, Rule 6.1 (Voluntary Pro Bono Publico Service).[6] Appointed attorneys are entitled to be reimbursed for out-of-pocket expenses and overhead costs, but need not receive a fee for their services, as long as the services do not reach “unreasonable levels.” State v. Wigley, 624 So.2d 425, 429 (La.1993). The Rules of Professional Conduct further provide that “[a] lawyer shall not seek to avoid appointment by a tribunal to represent a person except for good cause.... ” La. Rules of Professional Conduct, Rule 6.2.[7] *995 Some examples of “good 11(icause” are that representation of the client would result in an ethical or legal violation, representation would result in an unreasonable financial burden, or the client and cause is so repugnant to the lawyer as to impair the client-lawyer relationship. See id. Notably, these examples are non-exhaustive.
We first note Mr. Dixon’s testimony, wherein he explained that Mr. Bunton is not contractually allowed to maintain a practice apart from his duties as chief public defender for the OPD. We are as well mindful of Mr. Dixon’s statement that Mr. Bunton, in light of his substantial responsibilities, would not “effectively” be able to represent clients and fulfill his duties as District Defender.
Introduced without objection at the hearing was an affidavit by Mr. Bunton outlining his responsibilities as District Defender and detailing the various challenges facing his office.[8] The OPD and the Louisiana Public Defender Board, like other state-funded agencies, are facing a severe budget crisis. Mr. Bunton predicted that OPD’s projected expenditure for fiscal year 2016 would exceed its budget by nearly one million dollars. Recently, OPD reports it was forced to institute a hiring freeze, despite the existence of vacant staff attorney positions, resulting in an increased workload for the remaining attorneys. As a result, OPD has now begun refusing to represent indigent defendants in certain felony cases, reasoning that its overburdened attorneys cannot effectively comply with constitutional and ethical mandates given current caseloads.[9]
-Ill2
We find, under the particular and specific circumstances presented, that Mr. Bun-ton has demonstrated “good cause” under Rule 6.2 to decline the appointment in this case, as a member of the bar eligible for pro bono service. First, it is clear that his appointment in a personal capacity violates the terms of his employment with the Louisiana Public Defender Board. Second, if Mr. Bunton were to undertake representation of Mr. Singleton, it is possible that he would be prohibited from using any of his office’s resources.[10] Finally, and most im *996 portantly, considering Mr. Bunton’s extensive duties as head of an office facing increasing caseloads amid a shrinking budget, his appointment would likely violate several ethical rules, and perhaps even his constitutional duties as counselor. See La. Rules of Professional Conduct, Rules 1.1, I.3, 1.7; see also U.S.C.A. Const. Amends. VI, XIV; La. Const. art. 1, § 13; Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (“[Tjhe right to counsel is the right to the effective assistance of counsel.”) (citation omitted) (emphasis added).
Put simply, we find that maintaining Mr. Buntoris appointment would constitute a severe personal and professional hardship and imposition upon him which would likely adversely affect his ability to render attentive representation to 11sMr. Singleton at this time.[11] And we this find that the district judge abused her discretion in denying his motion to withdraw.
We do emphasize, however, that our opinion should not be read to give public defenders carte blanche to decline any and all appointments in their personal capacity, simply because of their status as public employees; declining a pro bono appointment should only be done for the gravest of reasons.
V
As a consequence of our decision, it is necessary to remand this matter to the district court so that the district judge will appoint an attorney for Mr. Singleton and afford the substituted counsel sufficient time to prepare for concluding the ongoing evidentiary hearing. And with respect to that hearing, we clarify that our earlier mandamus directing the re-start of the post-conviction evidentiary hearing by a date certain is fully recalled and we note that the district judge made a good-faith effort to comply with the deadline.
DECREE
The ruling in which the district judge denied the motion to withdraw filed by the Orleans Public Defenders and Derwyn Bunton is reversed. Derwyn Bunton and the OPD are withdrawn as counsel of record for Sherman Singleton. The matter is remanded to the district court for appointment of substitute counsel and for further proceedings.
WRIT GRANTED; REVERSED; REMANDED

. According to Mr. Singleton’s prior pleadings filed in this court, his original application for post-conviction relief was filed sometime in 1995, although the court minutes do not reflect this.

. Through December 31, 2008, the presiding judge was the Honorable Dennis Waldron. Following his retirement, on January 1, 2009, the Honorable Robin Pittman became the presiding judge.

. This motion was filed in the name of '‘Der-wyn Bunton, District Public Defender in and for Orleans Parish, through his assistant, undersigned counsel,” James Harper. The certificate of service claims service "upon the prosecution.” It also appears that no notice was afforded to Mr. Singleton, the client.

. La.C.Cr.P. art. 930.7 provides:
A. If the petitioner is indigent and alleges a claim which, if established, would entitle him to relief, the court may appoint counsel.
B. The court may appoint counsel for an indigent petitioner when it orders an evi-dentiary hearing, authorizes the taking of depositions, or authorizes requests for admissions of fact or genuineness of documents, when such evidence is necessary for the disposition of procedural objections raised by the respondent.
C. The court shall appoint counsel for an indigent petitioner when it orders an evi-dentiary hearing on the merits of a claim, or authorizes the taking of depositions or requests for admissions of fact or genuineness of documents for use as evidence in ruling upon the merits of the claim.

. The full text of Article 1, § 13, Rights of the Accused, reads:
When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel. In a criminal prosecution, an accused shall be informed of the nature and cause of the accusation against him. At each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment. The legislature shall provide for a uniform system for securing and compensating qualified counsel for indigents.

. Rule 6.1. Voluntary Pro Bono Publico Service
Every lawyer should aspire to provide legal services to those unable to pay. A lawyer should aspire to render at least (50) hours of pro bono publico legal services per year. In fulfilling this aspirational goal, the lawyer should:
(a) provide a substantial majority of the (50) hours of legal services without fee or expectation of fee to:
(1) persons of limited means or
(2) charitable, religious, civic, community, governmental and educational organizations in matters that are designed primarily to address the needs of persons of limited means; and
(b) provide any additional services through:
(1) delivery of legal services at no fee or substantially reduced fee to individuals, groups or organizations seeking to secure or protect civil rights, civil liberties or public rights, or charitable, religious, civic, community, governmental and educational organizations in matters in furtherance of their organizational purposes, where the payment of standard legal fees would significantly deplete the organization’s economic resources or would be otherwise inappropriate;
(2) delivery of legal services at a substantially reduced fee to persons of limited means; or
(3) participation in activities for improving the law, legal system or the legal profession.

. Rule 6.2. Accepting Appointments
A lawyer shall not seek to avoid appointment by a tribunal to represent a person except for good cause, such as;
*995 (a) representing the client is likely to result in violation of the Rules of Professional Conduct or other law;
(b) representing the client is likely to result in an unreasonable financial burden on the lawyer; or
(c) the client or the cause is so repugnant to the lawyer as to be likely to impair the client-lawyer relationship or the lawyer's ability to represent the client.

. The affidavit had been previously executed by Mr. Bunton in late 2015 for a hearing in a different section of court.

. The phenomenon of public defender's offices refusing cases, in New Orleans and beyond, has been recently discussed by several media outlets. See Ben Myers, Orleans Public Defender’s Office to Begin Refusing Serious Felony Cases Tuesday, Times-Picayune, Jan. 11, 2016, available at http://www.nola.com/ crime/index.ssf/2016/0 l/orleans_public_ defenders_to_be.html; John Simerman, New Orleans judge orders release of seven inmates charged with serious felonies because of lack of money for defense, but men will remain jailed pending an appeal, The New Orleans Advocate, Apr. 8, 2016, available at http://www.the neworleansadvocate.com/news/15428394-148 /orleans-judge-orders-seven-inmates-facing-serious-charges-released-for-lack-of-money-to-defend-them; see also John Pfaff, A Mockery of Justice for the Poor, New York Times, Apr. 29, 2016, available at http://www,nytimes. com/2016/04/30/opinion/a-mockery-of-justice-for-the-poor.html?_r=0.

.In his testimony, Mr. Dixon stated that Mr. Bunton was "expected to do nothing but indigent defense work.” Mr. Singleton's post-conviction case appears to qualify as "indigent defense work” and so it is unclear if Mr. Bunton’s appointment, even in his personal capacity, would constitute a "private practice” for which he would be required to obtain his own office supplies, malpractice insurance, etc.

. We are confident, however, that Mr. Bun-ton, having provided legal representation to Mr. Singleton since his appointment, intends to fully assist counsel to be substituted for him by promptly sharing his knowledge and insight into Mr, Singleton's post-conviction claims.