580 So.2d 1058 (1991)
In re COMPENSATION FOR INDIGENTS' CRIMINAL DEFENSE.
STATE of Louisiana
v.
Randy Neal CLARK, Demond Carey.
No. 23,092-KW.
Court of Appeal of Louisiana, Second Circuit.
May 23, 1991.
Wayne J. Blanchard, Burt & Hendrix by E. Daniel Burt, Jr., Shreveport, for applicants, Bobby D. Sutton and Robert A. Thrall.
Paul J. Carmouche, Dist. Atty., Shreveport, for respondent, State of La.
Shreveport Bar Ass'n by Robert E. Eatman, Sr. and L. Edwin Greer, Shreveport, amicus curiae.
Before MARVIN, SEXTON and LINDSAY, JJ.
MARVIN, Chief Judge.
Having been concurrently appointed by the trial court to serve as counsel for respective indigent criminal defendants and notified that the Caddo Parish Indigent Defender Board, their usual source of compensation for appointed service, would not be able to pay for their services, two Shreveport attorneys complain to us that their separate motions for reasonable compensation and expenses were denied by the trial court after a hearing.
By one writ application the two attorneys seek that we exercise our supervisory jurisdiction and reverse and render a judgment granting them "reimbursement for their *1059 expenses together with a reasonable hourly fee."[1]
While we recognize the sincerity, as well as the frustration, of applicants and their supporters and will address the contentions and arguments they make, we deny their application.

PROCEDURAL POSTURE
Each attorney, in a separate motion below, specifically prayed for an order requiring either or both Caddo Parish and the State of Louisiana to pay him reasonable compensation and reimburse him for reasonable expenses related to his appointed representation of an indigent defendant.
A copy of each motion was delivered or mailed to the Caddo District Attorney. No service of the motion or rule to show cause, however, was made on either the parish or the state. Applicants' filings in support of the application, including the transcript, do not indicate an appearance either by the parish, the state, or the district attorney. At the conclusion of direct examination of applicants and another witness at the hearing below, counsel for applicants "tendered" the witnesses for cross-examination only to the trial court.
At the hearing below, applicants presented uncontradicted testimony about their respective appointment and concurrent receipt of the "no-pay" letter from the Caddo IDB[2] and about their respective hourly overhead, number of hours and nature of the work done, and detailed expenses incurred or paid. One applicant has shown that he worked 20.15 hours on an appointed case and that his overhead is about $46 per hour. The other applicant, a salaried employee of a law firm, has shown that he has worked, thus far, 27.60 hours on a pending appointed case.
Applicants also testified generally of the professional and financial burden imposed on them and their paying clients, because of the number and frequency of appointments, and time and expense required, to represent indigent defendants on and after September 1, 1990, without pay.

CONTENTIONS
Applicants specifically assert that the trial court erred in its rulings that applicants' action was premature and that the parish and the state, against whom the court's order to compensate was sought, [impliedly were indispensable parties who] should be present in an adversary hearing to contest applicants' action.
Applicants broadly assert, with arguable support by recent cases interpreting constitutional and statutory provisions from other jurisdictions,
that the state is responsible for costs relating to the defense of indigent persons prosecuted by the state;
that attorneys are not ethically required to provide free representation to indigent defendants;
that uncompensated counsel is ineffective counsel; and
that forcing lawyers to represent indigent criminal defendants without reasonably compensating them amounts to an unconstitutional "taking" of the lawyer's property.

DISCUSSION
In 1963, the Supreme Court held that the 14th Amendment imposes the constitutional requirement on each state to appoint counsel for indigent criminal defendants in noncapital as well as capital cases. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). See also Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). Louisiana responded by creating a state indigent defender board (former LRS 15:141 et seq.) in 1966 and, within a decade, by including in the state constitution this provision:

*1060 At each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment. The legislature shall provide for a uniform system for securing and compensating qualified counsel for indigents. LSA-Const. Art. 1, § 13, in part.
Other laws were thereafter enacted on the same subject matter, some of which amended LRS 15:141 et seq. See State v. Bryant, 324 So.2d 389 (La.1975). Act 873 of 1981 expressed the intent of the Louisiana Legislature to repeal or remove LRS 15:141-143 and to allow Indigent Defender Boards or alternative procedures to provide counsel for indigent criminal defendants in each judicial district of the state.
The constitutional mandate for "uniformity" in Art. 1, § 13 was interpreted to allow that either an indigent defender board or public defender provide the required counsel to indigent criminal defendants in each judicial district, notwithstanding the language "uniform system" in the mandate. The intent of the constitution, according to the Bryant court, was to allow "for workability in a state with political subdivisions of widely varying population, geography, customs and problems," the primary concern being that all indigent defendants would be appointed counsel. 324 So.2d at p. 393.
We and the trial court are bound to follow the Louisiana Supreme Court's interpretation of the law, notwithstanding that courts of other states, especially in the 1980's, interpreting constitutions and statutes of their respective states, in the light of changing conditions, have granted lawyers the relief which applicants seek here. See Annotation, Right of Attorney Appointed by Court for Indigent Defendant To, and Court's Power to Award, Compensation by Public, in Absence of Statute or Court Rule, 21 ALR 3d 819 (1968), as supplemented.
In Bryant, supra, our supreme court did not ignore the arguable validity of the several contentions the applicants make here, but mentioned:
... changing conditions ... the increase in crime ... difficulty of criminal practice... the burden on some lawyers if the load is inequitably distributed ... 324 So.2d at p. 391.
Because the Bryant record contained only scant facts, the court did not resolve and only briefly addressed the contentions that forced and uncompensated representation was "ineffective" and was either a deprivation of the lawyer's property or involuntary servitude. Ibid. There, no services had been performed and the trial court had denied relief as premature. The court indicated, however, that if a district court "should" deny compensation to lawyers appointed for indigents, the supreme court, on proper facts, "will be open to receive and consider a proper application for relief."
State in Interest of Johnson, 475 So.2d 340 (La.1985), is clearly distinguishable on its facts and on the law that was there applied. An action to declare a child abandoned and terminate a parent-child relationship under LRS 9:403 was held to be "identical in object and similar in grounds to an action to terminate a parent-child relationship for abuse and neglect under [LRS] 13:1601-04." Plaintiff DHHR was held obligated under the statute and CCP Art. 5096 to pay an attorney fee to the lawyer appointed by the court to represent indigent parents. Attorneys for indigent criminal defendants were distinguished by the Johnson court from attorneys appointed under LRS 9:403. 475 So.2d at 343.
We cannot agree with applicants' argument that fees of counsel appointed to represent indigents are among the "expenses whatever attending criminal proceedings" which the parish is required to pay under LRS 15:304. See State v. Simmons, 43 La.Ann. 991, 10 So. 382 (1891). Compare the statutes in question in Johnson, supra, which expressly mandate payment of the fee of the attorney appointed for the indigent parents.
While we agree with the Johnson court's recognition of the inherent power of a court to furnish counsel to indigents and require an entity of another branch of government to compensate that attorney, we note that the constitutional mandate to *1061 provide a system, or systems a la Bryant, to compensate counsel for indigent criminal defendants in Louisiana is squarely directed at the Legislature. LSA-Const. Art. 1, § 13. See also State v. Campbell, 324 So.2d 395 (La.1975).
As Bryant, supra, stated, where a proper showing is made, this court will not be oblivious to changing circumstances and is open to receive and consider relief for counsel for indigent criminal defendants. The showing made, however, by applicants does not warrant our supervisory intervention at this juncture.
Applicants have not suggested what percentage of their respective time is devoted to indigent criminal defendants they are appointed to represent in a given year. In this respect, we note that the West Virginia Supreme Court, after several years of litigation and mandatory orders to the state legislature, eventually ruled that no lawyer in that state may be required to devote more than 10 percent of his normal work year to court appointed indigent clients and that court appointed lawyers must be paid at least $65 an hour for in-court work. Jewell v. Maynard, 383 S.E.2d 536 (W.Va. 1989).
Louisiana attorneys are ethically required to provide some reasonable, equitably allocated, and not substantially burdensome amount of free representation to indigent criminal defendants. State v. Doucet, 352 So.2d 222 (La.1977); Bryant, supra; State v. Clifton, 247 La. 495, 172 So.2d 657 (1965). We do not attempt to suggest in the abstract what amount of time in a given period is reasonable and not substantially burdensome to the individual attorney.
From this application we cannot conclude that the amount of time expended by either applicant for an appointed indigent criminal defendant in an unstated time frame is unduly burdensome so as to amount to an unconstitutional taking, deprivation, or involuntary servitude. See Doucet, supra. We cannot determine whether the "severe financial situation" of the ID Board is a permanent or temporary situation.
Similarly, we cannot determine from this application whether the "load" on the applicant attorneys is inequitably imposed or, as applicants also argue, whether, because of the "load" or press of time, appointed counsel is per se "ineffective counsel." See Bryant, supra.

CONCLUSION
Finding no error in the specific rulings of the trial court which are complained of, we affirm the trial court, and deny further review.

APPENDIX

OFFICE OF THE

INDIGENT DEFENDER

FIRST JUDICIAL DISTRICT

CADDO PARISH

509 Marshall St., Suite 300

Shreveport, Louisiana XXXXX-XXXX

Phone 221-2220
TO ALL FELONY APPOINTED COUNSEL IN CADDO DISTRICT COURT:
This is to advise you that effective September 1, 1990 attorneys who are appointed by the Judges of the First Judicial District Court to represent indigent defendants in criminal cases will not receive compensation for their services from the Indigent Defender Board. This decision was made pursuant to a meeting on August 30, 1990 involving members of the Caddo Parish Indigent Defender Board and representatives from the Shreveport City Court, First Judicial District Court and the Shreveport Bar Association.
Declining revenue during the first eight (8) months of the year has created a severe financial situation requiring appointment of counsel without compensation.
 Sincerely,
 (s) Gordon O. Bartage
 GORDON O. BARTAGE
 Chairman
 Indigent Defender Board
NOTES
[1] Applicants were informally supported in the trial court by several other attorneys who announced they agreed to be "bound" by the trial court's determination of a reasonable hourly fee and are supported here by an amicus curiae brief filed by the Shreveport Bar Association.
[2] The ID Board's letter, which is appended to this opinion, explains that the Board's revenue, which apparently was once sufficient to provide some compensation for appointed attorneys, was "declining ... during the first eight months of the year [1990 and] has created a severe financial situation requiring appointment of counsel without compensation."