898 So.2d 325 (2005)
STATE of Louisiana
v.
Adrian CITIZEN. and
State of Louisiana
v.
Benjamin G. Tonguis.
No. 2004-KA-1841.[*]
Supreme Court of Louisiana.
April 1, 2005.
*326 Allen L. Smith, Jr., Lake Charles, Counsel for Applicant.
Hon. Charles C. Foti, Jr., Attorney General, Burton Paul Guidry, Assistant Attorney General, Hon. Robert Bryant, District Attorney, Carla Sue Sigler, Assistant District Attorney, Frederick Wayne Frey, Assistant District Attorney; Phyllis Elaine Mann, Alexandria, Gary Proctor, Marilyn Michele Fournet, Counsel for Respondents.
VICTORY, J.
These consolidated cases present the issue of funding for indigent defendants in *327 criminal cases in the State of Louisiana. In particular, the legislature has enacted statutes which require the State to provide the funds for indigent defense through the Louisiana Indigent Defense Assistance Board ("LIDAB") and statewide indigent defender boards in each judicial district but has at the same time failed to provide adequate appropriation to support these services. Further, the legislature has exempted local governmental entities from the payment of such expenses.

FACTS AND PROCEDURAL HISTORY
The instant direct appeal arises out of two unrelated Calcasieu Parish killings. After a Calcasieu Parish grand jury returned a first degree murder indictment on April 11, 2002 against Benjamin Tonguis, the trial court appointed the Chief Public Defender for the parish, Ronald Ware, to represent him. Ware informed the court of his prohibitive caseload, and the court removed him from the case and sought to appoint solo practitioner Phyllis E. Mann.[1] On December 10, 2003, counsel filed a document captioned as a Motion to Determine Source of Funds to Provide Competent Defense. Counsel also requested that the court adopt into the record a transcript from a 2001 hearing in three consolidated prior cases in which the trial court could not readily find funding for court appointed attorneys in private practice.[2] The trial court set counsel's funding motion for a hearing and granted her request to supplement the record.
On January 30, 2004, the trial court consolidated the Tonguis case with that of Adrian Shannondoah Citizen, another Calcasieu Parish first-degree murder defendant indicted on October 10, 2002, seeking to be represented by appointed counsel Phyllis Mann.[3] Also on that date, the trial court held a hearing on the funding issues raised by Mann. At this hearing, counsel for the Calcasieu Parish Police Jury (the "CPPJ") filed a motion to dismiss his client as a party to Mann's motion, as in his view La. R.S. 15:304 and La. R.S. 15:571.11 forbid local funding for the representation of indigent defendants. The court then explored the possibility with prosecutors of *328 amending the charges against each defendant to second-degree murder and, after receiving no favorable response, considered the testimony adduced at the prior October 2001 hearing regarding the financial status of the CPPJ, with an eye toward using it as a funding source.
During that October 2001 hearing, counsel for the CPPJ explained that the current system for maintaining the criminal justice system in Calcasieu Parish, apparently unique among the 64 parishes in Louisiana, evolved in 1985 after voters in the parish approved an ad valorem tax specifically dedicated to maintaining the Criminal Court Fund, established pursuant to La. R.S. 15:571.11(A). Voters renewed the tax in 1995 and will consider it again in 2005. As explained by the parish attorney, this system has clearly been an overwhelming success. Using the figures from the last fiscal year, the attorney explained that in 2000, the tax, as supplemented by fines and forfeitures, put into the Criminal Court Fund $3,500,000, by far the largest portion of the total amount of $5,300,000, which also included funds from other sources such as grant programs. By agreement, 20% of the Fund portion generated by the ad valorem tax and fines and forfeitures goes into the witness and juror fee account, 60% to the D.A.'s office, and 40% to the district courts. Any surplus remaining in the witness and jury fee account at the end of the year does not revert to the general parish fund[4] but is split on a 50/50 basis between the courts and the D.A.'s office. In 2000, that surplus amounted to some $440,000, an average figure over a seven year period.[5] Counsel for the CPPJ further explained that his client would not mind allocating a portion of these funds for capital defense, but could not do so without the agreement of both the 14th J.D.C. and the Calcasieu Parish District Attorney.
However, by the time of the January 30, 2004, hearing, the attitude of the CPPJ had apparently changed. The parish attorney explained that the CPPJ had concluded that since voters in Calcasieu Parish had approved the ad valorem tax, by far the biggest component of the Criminal Court Fund, specifically for the purpose of maintaining the court system and the District Attorney's Office, the CPPJ had no obligation, or even the authority, to divert some of that tax money to criminal defense. Chief Public Defender Ware underscored the problem facing the court by stating that his office currently owed close to $47,000 for capital defense and expected to owe at least an additional $150,000 in upcoming cases which he had already committed to fund. He further informed the court that his office generated approximately $5,550 per month. Despite the apparent intransigence of the CPPJ, Prosecutor Wayne Frey suggested that the court pay defense counsel from the surplus monies contained in the CPPJ's Criminal Court Fund (provided the parties agreed upon a funding cap), and the court agreed to propose the idea to his fellow judges and to go before the CPPJ with a funding *329 proposal. However, an increase in jury and witness fees had reduced the surplus in the Fund from a previous average of $450,000 to approximately $300,000. The court expressed its frustration with the continued lack of funding and the fact that it faces some version of the same funding dilemma in virtually every criminal case before it. The court vowed to address the issue at the next judges' meeting, and informed the parties that if the judges (and presumably the district attorney and police jury) could not resolve the funding issue collectively, then the court would issue an order that the money needed to pay defense counsel would come from the CPPJ.
On April 27, 2004, after meeting no success with the judges and district attorney, the court found that the CPPJ was the only possible source of adequate funding. The court went on to find La. R.S. 15:304 and La. R.S. 15:571.11 "ambiguous," and that the statutes unconstitutionally deprive the defendants of their right to a fair and speedy trial and their right to counsel. Finally, the court ordered the CPPJ to place $200,000 into the court registry to be distributed to the attorneys representing Tonguis and Citizen. In its ensuing written reasons, the court also ordered the CPPJ to place into an escrow account $75,000 for expert witness fees and case related expenses.
Both the State and the CPPJ have appealed to this Court the trial court's declaration of unconstitutionality, see La. Const. art. V, § 5(D), with the Office of the Attorney General filing a brief as is its right under La. R.S. 13:4448, and the trial court's order that the CPPJ provide the funds for these indigents' defenses.[6]

DISCUSSION

Background
A defendant is entitled to the assistance of counsel in criminal proceedings. U.S. Const. Amend. IV; La. Const. Art. I, § 13; Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)[7]; State v. Strain, 585 So.2d 540, 542 (La.1991); State v. Carpenter, 390 So.2d 1296, 1298 (La.1980). Specifically, La. Const. Art. I § 13 provides that "at each stage of the proceedings, every person is entitled to assistance of counsel [ ... ] appointed by the court if he is indigent and charged with an offense punishable by imprisonment. The *330 legislature shall provide for a uniform system for securing and compensating qualified counsel for indigents." Id.; State v. Adams, 369 So.2d 1327, 1329 (La.1979); see also La. Const. Art. I § 2 ("[n]o person shall be deprived of life, liberty, or property except by due process of law."); cf. La. Const. Art. I § 3 ("No person shall be denied the equal protection of the laws."). Louisiana responded to the command of Gideon by creating a state indigent defender board (former La. R.S. 15:141 et seq.) in 1966 and, within a decade, by enacting La. Const. Art. I § 13.
Lower courts have interpreted the constitutional mandate for "uniformity" in La. Const. Art. 1, § 13 to allow that either an indigent defender board or public defender provide the required counsel to indigent criminal defendants in each judicial district, notwithstanding the language "uniform system" in the mandate. In Re Compensation for Indigents' Criminal Defense, 580 So.2d 1058, 1060 (La.App. 2 Cir.1991). This court found that the language of the constitution "was to allow `for workability in a state with political subdivisions of widely varying population, geography, customs and problems,' [with] the primary concern being that all indigent defendants would be appointed counsel." Id. (quoting State v. Bryant, 324 So.2d 389, 393 (La.1975)).
The current legislative system set out in an attempt to meet the constitutional command of La. Const. Art. I § 13 to provide a uniform system for securing and compensating qualified counsel for indigents appears in La. R.S. 15:144 et seq. (Title XIV: Right to Counsel). These statutes require each judicial district to create an indigent defender board, La. R.S. 15:144, which shall maintain lists of volunteer and non-volunteer attorneys licensed to practice law in Louisiana. La. R.S. 15:145(A). Each board must then select the procedure for providing counsel to indigents, whether it be through court selection of volunteer attorneys (or non-volunteer attorneys if needed), through employment of a chief indigent defender and supporting assistants, through contracting with available attorneys, or through any combination of the above. La. R.S. 15:145(B). Title XIV further creates an indigent defender fund in each judicial district, La. R.S. 15:146, sets out proceedings to determine indigency, La. R.S. 15:147, and authorizes partial reimbursement from indigents. La. R.S. 15:148. Finally, La. R.S. 15:151 et seq. establish a statewide Indigent Defense Assistance Board to provide for supplementary funds in certain cases, and to "cause counsel to be enrolled" to represent a defendant sentenced to death on direct appeal and in post-conviction proceedings.
In 1993, this Court addressed the issue of indigent defense funding in State v. Peart, 621 So.2d 780, 785 (La.1993). At the time Peart was decided, La. R.S. 15:304 required all parishes and the City of New Orleans to pay "[a]ll expenses... whatever attending criminal proceedings ..." In Peart, the Court answered five questions regarding La. Const. Art. I § 13 and then-La. R.S. 15:304. Specifically, the court first found that the portion of Art. I § 13 requiring the state to create a uniform system for securing and compensating qualified counsel for indigents "creates no personal right which individual defendants may exercise." Id., 621 So.2d at 786. Next, the Court found that then-La. R.S. 15:304 did not unconstitutionally burden the state's political subdivisions by requiring that they fund the indigent defender system. Id., 621 So.2d at 787. Third, the Court held that an inmate may raise certain ineffective assistance claims pretrial when judicial economy demands it, id., and fourth, that the cases of several similarly situated defendants may be consolidated, provided that the court makes *331 findings individually tailored to each defendant. Id., 621 So.2d at 788. The Court then determined that defendants assigned counsel in a particular section of Orleans Parish Criminal District Court received constitutionally deficient counsel, and thus found the existence of a rebuttable presumption of counsel's ineffectiveness in cases arising out of that section of court. Id., 621 So.2d at 790-91. Finally, the Court noted that:
If legislative action is not forthcoming and indigent defense reform does not take place, this Court, in the exercise of its constitutional and inherent power and supervisory jurisdiction, may find it necessary to employ the more intrusive and specific measures it has thus far avoided to ensure that indigent defendants receive reasonably effective assistance of counsel.
Id., 621 So.2d at 791.
Also in 1993, the Court decided State v. Wigley, 624 So.2d 425, 426 (La.1993), wherein we held that uncompensated representation of indigents, when reasonably imposed, is a professional obligation burdening the privilege of practicing law in this state and does not violate the constitutional rights of attorneys. However, we also held that "any assignment of counsel [from the private] bar to defend an indigent defendant must provide for reimbursement to the assigned attorney of properly incurred and reasonable out-of-pocket expenses and overhead costs." Id. at 429.[8] Finally, in order to appoint private counsel in indigent defendant cases, the Court set out the following requirements:
We fully appreciate that the sources of funds from which appointed counsel may be reimbursed are limited. In future cases it will therefore be the district judge's responsibility to determine before he appoints counsel that funds sufficient to cover the anticipated expenses and overhead are likely to be available to reimburse counsel in the manner outlined above, whether the funds come from the Indigent Defender Board, from the state, from one court fund or another, from the local government subdivision pursuant to La.Rev.Stat. Ann. § 15:304 (West 1992), or from any other available source. If the district judge determines that funds are not available to reimburse appointed counsel, he should not appoint members of the private bar to represent indigents.
Id.
In a related vein, in State v. Craig, 93-2515 (La.5/23/94), 637 So.2d 437, which, like the instant case involved pre-trial applications filed by defendants facing capital murder charges, this Court held that the extant version of La. R.S. 15:304, governing expenses paid by the parishes, provided a source of supplemental funding for counsel and expert witness fees in cases in which the resources of the local Indigent Defender Boards were not up to the task. *332 Craig, 93-2515 at 1, 637 So.2d at 439 ("[T]he district court can order the local government of the parish where the case is being tried to defray necessary expenses surrounding indigent defense, such as the fees of investigators and expert witnesses, first through the criminal court fund [La. R.S. 15:571.11], and, should this be exhausted, then though the local government general fund [pursuant to La. R.S. 15:304].")
However, barely three months after this Court decided Craig, the legislature amended La. R.S. 15:304 to add a proviso that "[n]othing in this Section shall be construed to make the parishes or the city of New Orleans responsible for the expenses associated with the costs, expert fees, or attorney fees of a defendant in a criminal proceeding." 1994 La. Acts, 3rd Ex.Sess. 81. The same amendment deleted from La. R.S. 15:571.11(A)(1)(a) language providing for payment of "expenses of attorneys appointed to represent indigent persons under any public defense program" from the Criminal Court Funds maintained by the various parishes, despite the fact that the legislature had just reenacted such language a year before in 1993 La. Acts 834. See also 1994 La. Acts 3rd Ex.Sess. 52 (amending La. R.S. 15:571.11 to delete previous authorization for courts to use local funds for defense of indigents). La. R.S. 15:304, as amended in 1994, now provides:
§ 304. Expenses to be paid by parishes; juror's fee in city of New Orleans

All expenses incurred in the different parishes of the state or in the city of New Orleans by the arrest, confinement, and prosecution of persons accused or convicted of crimes, their removal to prison, the pay of witnesses specifically provided for by law, jurors and all prosecutorial expenses whatever attending criminal proceedings shall be paid by the respective parishes in which the offense charged may have been committed or by the city of New Orleans, as the case may be. The expenses shall be paid by the parish treasurer or by the city of New Orleans after an account of the expenses shall be duly certified to be correct by the presiding judge and the clerk of court. The fees, salaries, and expenses to be paid shall be fixed and regulated by the parish or city authority unless otherwise provided by law; however, those persons serving as jurors in the trial of criminal cases in the city of New Orleans shall be entitled to compensation of sixteen dollars for each and every day or part of a day on which they serve as jurors in any criminal case to be paid by the city of New Orleans; provided further that this shall not become effective until the council of the city of New Orleans will have appropriated sufficient funds for this purpose. Notwithstanding the provisions of this Section, the city of New Orleans shall only pay the above expenses after the special account created pursuant to R.S. 15:571.11(D), and to the extent authorized thereby, shall have been depleted. Nothing in this Section shall be construed to make the parishes or the city of New Orleans responsible for the expenses associated with the costs, expert fees, or attorney fees of a defendant in a criminal proceeding. (Emphasis added.)
La. R.S. 15:571.11 now provides in pertinent part as follows:
§ 571.11. Dispositions of fines and forfeitures
A. (1)(a) All fines and forfeitures, except for forfeitures of criminal bail bonds posted by a commercial security imposed by district courts and district attorneys, conviction fees in criminal cases, and prosecutions for violations of *333 state law or parish ordinances, upon collection by the sheriff or executive officer of the court, shall be paid into the treasury of the parish in which the court is situated and deposited in a special "Criminal Court Fund" account, which, on motion by the district attorney and approval order of the district judge, may be used or paid out in defraying the expenses of the criminal courts of the parish as provided in Ch.C. Articles 419 and 421 and R.S. 16:6, in defraying the expenses of those courts in recording and transcribing of testimony, statements, charges, and other proceedings in the trial of indigent persons charged with the commission of felonies, in defraying their expenses in the preparation of records in appeals in such cases, for all expenses and fees of the petit jury and grand jury, for witness fees, for attendance fees of the sheriff and clerk of court, for costs and expenses of a parish law library, and for other expenses related to the judges of the criminal courts and the office of the district attorney. In the Second Judicial District, the criminal court fund shall be used to defray the expenses of the criminal court system. (Emphasis added.)

Constitutionality of La. R.S. 15:304 and 15:571.11
In the instant case, defense counsel challenged the constitutionality of La. R.S. 15:304 and La. R.S. 15:571.11 in her Motion to Determine Source of Funds to Provide Competent Defense. Specifically, counsel found fault with La. R.S. 15:304's command that "[n]othing in this Section shall be construed to make the parishes or the city of New Orleans responsible for the expenses associated with the costs, expert fees, or attorney fees of a defendant in a criminal proceeding." As to La. R.S. 15:571.11, it appears that defense counsel objects not to what the statute contains, but to the effect of 1994 La. Acts, 3rd Ex.Sess. 81, which amended the statute to delete the provision authorizing the use of a parish's criminal court fund to defray costs of providing counsel to indigent defendants, although the provision had been re-affirmed only a year before in 1993 La. Acts 834. See also 1959 La. Acts 8 § 1 (authorizing payments to defray costs of defending indigents). According to counsel, these legislative actions "deprive [her] of her property interest in both her license to practice law and the financial interest of her law firm without due process of law in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Article 1, Section 4 of the Louisiana Constitution of 1974 as amended." Counsel further claimed that the legislature's creation of the Louisiana Indigent Defender Assistance Board ("LIDAB") does not absolve the state of the duty to provide LIDAB with adequate appropriation to ensure that the state meets the constitutional requirements set out in Wigley, 624 So.2d at 429, and Peart, 621 So.2d at 791.
The trial court rejected counsel's argument regarding counsel's own due process claim, but agreed with counsel's argument regarding the most recent changes to La. R.S. 15:304 and La. R.S. 15:571.11 and their effect on the rights of the instant indigent defendants. Specifically, the trial court found that because the two statutes, when read together, bar the court from ordering the use of surplus funds to defray the costs of representation for an indigent defendant, they are unconstitutional:
under the provision of Article I, Sections 2,3, and 13 of the Louisiana Constitution of 1974, as amended, and the corresponding Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, securing the rights of due process, equal protection, and the right to counsel.
*334 The State, the CPPJ,[9] and the Attorney General claim that the trial court erroneously ruled La. R.S. 15:304 and La. R.S. 15:571.11 unconstitutional and thus lacked the judicial authority to order the police jury to make available $200,000 for attorney fees and $75,000 for expert witness fees. Specifically, prosecutors argue that the trial court ignored the presumption of constitutionality to be afforded all statutes, that the court violated La. Const. Art. II § 2 ("Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others.") and La. Const. Art. III § 1 ("The legislative power of the state is vested in the legislature[ ... ]."), and that the trial court could have resolved the case without ruling the statutes unconstitutional. In its brief, counsel for the attorney general seconds the prosecutors' argument that the legislature should determine who bears the costs of defending indigents.[10]
As an initial matter, statutes are presumed constitutional, and any doubt is to be resolved in the statute's favor. State v. Brenner, 486 So.2d 101, 103 (La.1986); Theriot v. Terrebonne Parish Police Jury, 436 So.2d 515, 520 (La.1983). The party challenging the constitutionality of a statute bears the burden of proving that statute to be unconstitutional. State v. Fleury, 01-0871 (La.10/16/01), 799 So.2d 468, 472; State v. Brooks, 541 So.2d 801, 811 (La.1989); State v. Griffin, 495 So.2d 1306, 1308 (La.1986). The challenging party must also cite to the specific provision of the constitution which prohibits the legislative action. Fleury, supra at 472 (citing Moore v. Roemer, 567 So.2d 75, 78 (La.1990)).
Further, although the courts generally possess the power and authority to decide the constitutionality of challenged statutory provisions, a court "is required to decide a constitutional issue only `if the procedural posture of the case and the relief sought by the appellant demand that [it] do so.'" State v. Mercadel, 03-3015 (La.5/25/04), 874 So.2d 829, 834 (quoting Ring v. State, Dept. of Transp. & Development, 02-1367 (La.1/14/03), 835 So.2d 423, 428). Further, a court should avoid constitutional questions whenever the case can be disposed of on non-constitutional grounds. Ring, 835 So.2d at 427; see Cat's Meow, Inc. v. City of New Orleans, 98-0601 (La.10/20/98), 720 So.2d 1186, 1200.
Notably, neither the trial court, nor defense counsel, made any mention of the statutes in question enjoying a presumption of constitutionality. Further, in issuing its ruling, the court stated that it found the language of La. R.S. 15:304 that "nothing in this section shall be construed to make the parish responsible for attorney fees and costs" to be ambiguous.[11] In any *335 event, the trial court's ruling that La. R.S. 15:304 and 15:571.11 violate the defendants' rights of due process, right to counsel, and equal protection is erroneous. The constitution requires that indigent defendants are entitled to the assistance of counsel and that the legislature provide for a uniform system for securing and compensating qualified counsel. The statutes at issue clearly meet the constitutional requirements because they, along with La. R.S. 15:144 et seq. and La. R.S. 15:151 et seq., specifically provide the medium in which to seek funding for indigent defense. The statutes do not declare that indigent defense costs will not be paid, they simply place this burden on the state. The fact that the legislature has not adequately funded the programs it has created to meet its constitutional mandate does not make the statutes themselves unconstitutional. Further, while the statutes prohibit the parishes from being required to pay for indigent defense, nothing in the statutes prohibit the parishes from paying these expenses if they so chose. As stated in Craig, the legislature has the constitutional right and authority to declare responsibility for the payment of these costs and it has done so. The mere fact that it has exempted these expenses from the individual parishes does not diminish any of the constitutionally guaranteed rights and freedoms of these defendants or of their attorneys.

Trial court's requirement that the CPPJ provide indigent defense funding
As we have found that the statutes are not unconstitutional, the next issue is whether the trial court exceeded the constitutional function of the judiciary in ordering the police jury to set aside funding for indigent defendants.
As a general matter, as mentioned above, La. Const. Art. I § 13 explicitly states that "[t]he legislature shall provide for a uniform system for securing and compensating qualified counsel for indigents." Additionally, La. Const. Art. II § 2 states that "[e]xcept as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others." Cf. La. Const. Art. III § 1 ("The legislative power of the state is vested in the legislature[ ... ].").
Given the above, the constitution explicitly places the duty of providing a working system for securing the representation of indigent defendants squarely on the shoulders of the legislature. See In Re Compensation for Indigents' Criminal Defense, supra at 1060-61 ("[the duty] to compensate counsel for indigent criminal defendants in Louisiana is squarely directed at the Legislature."). Accordingly, while the legislature may be in breach of *336 that duty, in one view at least, a trial court may not reach into a local parish's accounts when constitutionally prohibited by the legislature. State v. Henderson, 341 So.2d 879, 882 (La.1977) ("[w]here the legislature has provided an adequate method [for paying expenses incurred in enforcing indigent defendant's right to compel attendance] and there is no necessity shown for departure from it, the court must follow the statutory mandate."); cf. State v. Smith, 99-0606 (La.7/6/00), 766 So.2d 501, 510 (responsibility of court to enforce laws rather than legislate).
The legislature has clearly determined through statutory enactments that the State, not the parishes, will pay for indigent defense pursuant to the constitutional mandate of La. Const. Art. I, § 13. This could not be clearer given the legislative amendments of La. R.S. 15:304 and 15:571.11 in direct response to this Court's ruling in Craig that those statutes, before amendment, required the parishes, first through the criminal court funds in La. R.S. 15:571.11 and then through the general funds in La. R.S. 15:304, to provide funding for indigent defense where the State Indigent Defender Boards lacked the resources. Thus, we find that the trial court erred in ordering the CPPJ to place $200,000.00 in the court registry for the court appointed attorneys and to place $75,000.00 in escrow for other case-related expenses.
However, we have often expressed in indigent defendant funding cases that budget exigencies cannot serve as an excuse for the oppressive and abusive extension of attorneys' professional responsibilities, and that this Court, in the exercise of its constitutional and inherent power and supervisory jurisdiction, has the power to take corrective measures to ensure that indigent defendants are provided with their constitutional and statutory rights. See Peart, supra; Wigley, supra. In fact, in Peart, we specifically warned the legislature that we would undertake more intrusive measures if the legislature failed to act.
The legislature has taken steps to remedy the critical state of indigent criminal defense in Louisiana since our warnings in Peart. For instance, it created the statewide Indigent Defense Assistance Board in 1997, via La. R.S. 15:151. In 2003, the legislature, by separate but identical House and Senate Resolutions (HR 151; SR 112), created the Louisiana Task Force on Indigent Defense Services, effective January 12, 2004, to study the problem and make an initial report no later than March 1, 2004. The legislature has constituted the Task Force as a blue ribbon committee whose members range from the Governor to the Chief Justice of this Court. It is not clear whether the 2003 Task Force ever made its report, but this year, by concurrent resolution (SCR 136), the legislature voted to continue the Task Force, directing it to report on its findings together with specific recommendations no later than April 1, 2005. We assume that, given the obvious deficiencies in funding from the State to satisfy its constitutional mandate in La. Const. Art. I, § 13, this Task Force will work diligently to formulate specific recommendations on April 1, 2005, to address these problems and that the legislature will act quickly to promulgate these, or other, appropriate solutions.
However, even assuming that these steps will lead to sweeping reform of the system and to adequate funding for indigent defense, reform will not likely come in any reasonable time to help the present defendants. Until the legislature takes remedial action, this Court must address the immediate problems of the instant defendants in securing constitutionally adequate counsel (in a constitutionally and statutorily *337 required timely manner) in their forthcoming capital prosecutions. We are very much cognizant of the lengths to which other state courts have gone to ensure that the indigents' constitutional rights are protected, in spite of legislative inaction.[12]
*338 This is particularly appropriate in cases involving indigent defense in our state courts, as this is an area over which the Court has supervisory jurisdiction and the duty to ensure that the criminal justice system is functioning in a constitutional manner.
In this case, Mr. Citizen, was indicted for first-degree murder on October 10, 2002, and he remains in jail with no funds available for the attorney appointed to represent him and, under current circumstances, may remain there indefinitely[13] unless funds are provided for his defense. Mr. Tonguis, was indicted for the first-degree murder of his infant child on April 11, 2002, and though he is not incarcerated, no funds are available for the attorney appointed to represent him. Implicit in these defendants' constitutional right to assistance of counsel is the State's inability to proceed with their prosecution until it provides adequate funds for their defense.[14] While La. R.S. 15:304 and 15:571.11 cannot be construed to force the CPPJ to pay for the costs of these indigents' defenses, nothing in those statutes prohibits the CPPJ from paying these expenses, and these funds may come from the Criminal Court Fund upon agreement of the legal entities responsible for its administration under La. R.S. 15:571.11.
In order to assure timely representation, we now alter one of the rules previously laid down in Wigley, supra. A district judge should appoint counsel to represent an indigent defendant from the time of the indigent defendant's first appearance in court, even if the judge cannot then determine that funds sufficient to cover the anticipated expenses and overhead are likely to be available to reimburse counsel. The appointed attorney may then file a motion to determine funding, as was done in this case, and if the trial judge determines that adequate funding is not available, the defendant may then file, at his option, a motion to halt the prosecution of the case until adequate funding becomes available.[15] The judge *339 may thereafter prohibit the State from going forward with the prosecution until he or she determines that appropriate funding is likely to be available.

DECREE
For the reasons stated herein, the judgment of the trial court is reversed. We order that unless adequate funds are identified and made available in a manner authorized by law as expressed in this opinion, upon motion of the defendants, the trial judge may halt the prosecution of these cases until adequate funds become available to provide for these indigent defendants' constitutionally protected right to counsel or take other measures consistent with this opinion which protect the constitutional or statutory rights of the defendants.
REVERSED AND REMANDED.
KNOLL, J., concurs in the result.
JOHNSON, J., concurs in part, dissents in part and will assign reasons.
NOTES
[*] On September 23, 2004, this Court ordered that this appeal and a writ application filed in State of Louisiana v. Adrian Citizen, 04-KD-1154, be "consolidated for oral argument, hearing, and decision."
[1] At some time post-indictment, the trial court also apparently sought to appoint M. Michele Fournet and Gary Proctor as co-counsel for the various parties. Unless specified for the sake of clarity, this report refers to all three interchangeably as "defense counsel." Court minutes indicate that Ms. Mann submitted a Motion and Order to Enroll as Co-Counsel on behalf of Ms. Fournet, which the trial judge signed on December 10, 2003.
[2] In that case, the trial court found that while La. R.S. 15:304 and La. R.S. 15:571.11 did not authorize local funds to be used to pay defense counsel, they did not preclude such use either. See State v. Smith, Turner and Winfree, 01-3128 (La.1/11/02), 805 So.2d 133. In the alternative, the trial court found both statutes unconstitutional, as they unlawfully interfered with a defendant's right to counsel. The Calcasieu Parish Police Jury appealed, and this Court found that the trial court unnecessarily ruled the statutes unconstitutional as it had resolved the funding issue on statutory grounds. Id. Accordingly, this Court remanded the matter to the court of appeal, which denied writs first without finding an unresolved controversy, State v. Smith, Turner and Winfree, 02-0065 (La.App. 3 Cir. 3/15/02) ("The only issue in the State's writ application to this court was disposed of in State v. Smith, et al., 01-3128 (La.1/11/02), 805 So.2d 133"), and then on procedural grounds. State v. Smith, Turner and Winfree, 01-1606 (La.App. 3 Cir. 4/9/02) (noting writ filed untimely and without proper notice to trial court). It thus appears that defense counsel in that case procured funds from the Calcasieu Parish Police Jury, although the record in the instant case does not contain conclusive evidence of such payment.
[3] Court minutes indicate that the trial judge signed a Motion and Order to Enroll as Counsel filed by Ms. Mann and Mr. Proctor on December 10, 2003.
[4] In 2000, the general fund for the parish enjoyed an overall surplus of some $7,000,000. However, the parish invests all of that surplus and the parish attorney explained that tapping into the surplus for any reason, including criminal defense, would cause considerable portfolio distress.
[5] As for the overall health of the fund, the parish attorney explained that in 2000, the fund had $5,563,000 in assets and $2,626,000 in liabilities, leaving it with an overall balance of $2,937,000. That balance was then split between the courts ($1,100,000) and the District Attorneys Office ($1,800,000). Whatever the problems elsewhere in the state, Calcasieu Parish appears to have secured ample funding of its criminal justice system with substantial monies in reserve.
[6] The CPPJ simultaneously applied for supervisory writs of review with the Third Circuit Court of Appeal and this Court. The CPPJ sought review of the trial court's ruling which ordered it to remove and set aside funds for indigent defense. On May 3, 2004, the CPPJ filed a motion to stay the trial court's order pending a ruling on these applications, which the trial court denied. The proceedings were stayed by order of this Court. The Third Circuit denied the CPPJ's writ application in an order dated May 14, 2004, because the trial court's rulings on the statutes' constitutionality meant jurisdiction was proper in this Court. The State filed a Motion and Order for Direct Appeal to this Court on April 30, 2004. On September 23, 2004, this Court ordered that the writ application filed by the CPPF and the State's appeal be consolidated for oral argument, hearing and decision. The parties seek review and reversal of the rulings of unconstitutionality, as well as its order for the CPPJ to fund indigent defense.
[7] In Gideon, the court noted that while:

[t]he right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, [] it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him.
Id., 372 U.S. at 344, 83 S.Ct. at 796-97.
[8] In Wigley, we set the limits on uncompensated representation as follows:

We find that in order to be reasonable and not oppressive, any assignment of counsel to defend an indigent defendant must provide for reimbursement to the assigned attorney of properly incurred and reasonable out-of-pocket expenses and overhead costs. However, a fee for services need not be paid, as long as the time the attorney must devote to cases for which he does not receive a fee does not reach unreasonable levels. What is unreasonable in this context is to be determined by the trial judge in the exercise of his discretion. Such a system will strike a balance between the attorney's ethical duty to provide services pro bono publico and his or her practical need to continue to perform his or her other obligations.
624 So.2d at 429.
[9] In its filing in this Court, the CPPJ explicitly adopted the arguments raised by prosecutors in their brief.
[10] Counsel for the attorney general also sets out a laundry list of cases standing for the proposition that indigent defendants are not entitled to the same services as their richer counterparts, and complains that the amount of overhead calculated by the trial court amounts to a "pipe dream" in today's economy. However, the defendants in the instant case seek not the same services afforded their richer counterparts; rather they seek only the representation to which they are entitled under U.S. Const. Amend. VI; La. Const. Art. I, § 13; Gideon v. Wainwright, supra. Further, the trial court apparently made a finding of fact regarding defense counsels' overhead pursuant to State v. Wigley, supra, and counsel for the attorney general shows no abuse of discretion in that regard.
[11] In the instant case, as well as in the almost identical State v. Smith, Turner, and Winfree, 01-3128 (La.1/11/02), 805 So.2d 133, the trial court heard extensive testimony that the state, the local Indigent Defender's Office, and the Indigent Defense Assistance Board have no money to spare. In fact, the board's director, Edward Greenlee, testified that the state reduced his agency's funding by 25% after its first year of existence, then failed to restore funding to previous levels in the seven subsequent years. Additionally, Greenlee testified that the state prohibits the board from running a deficit. Accordingly, when the local parish police jury's justice fund runs an average surplus of several hundred thousand dollars per year, the trial court's decision to tap these funds proves tempting. In fact, it appears that the trial court successfully did so in State v. Smith, Turner and Winfree, supra, when it found that the language of R.S. 15:304 ("nothing in this section shall be construed to make the parish responsible for attorney fees and costs") did not preclude a trial court from finding authorization to take the funds in other sections of the Code of Criminal Procedure, or under principles of general fairness. Such a solution however, clearly conflicts with the legislative intent of R.S. 15:304. See 1994 La. Acts, 3rd Ex.Sess. 81.
[12] For example, the Supreme Judicial Court of Massachusetts confronted a lack of legislative funding in Lavallee v. Justices in the Hampden Superior Court, 442 Mass. 228, 812 N.E.2d 895 (2004). In that case, certain judicial districts lacked the funding to woo competent attorneys to represent the indigent. Id. 812 N.E.2d at 899-900. Additionally, the state agency charged with providing court-appointed counsel in most circumstances had no staff available to represent petitioners. Id. While the district court in that case denied petitioners any relief, the court reversed holding:

We conclude that the petitioners are being deprived of their right to counsel under art. 12 of the Massachusetts Declaration of Rights, a deprivation that has resulted in severe restrictions on their liberty and other constitutional interests. Although we do not grant the precise remedy the petitioners seek for the reasons we shall explain, we hold that, on a showing that no counsel is available to represent a particular indigent defendant despite good faith efforts, such a defendant may not be held more than seven days and the criminal case against such a defendant may not continue beyond forty-five days.
Lavallee, 812 N.E.2d at 901.
The court reached this holding after looking to the manner in which other courts presented with difficulties securing or paying counsel addressed the problem. Lavallee, 812 N.E.2d at 908. Specifically, the court recognized that while many of its sister courts have rightly concluded that the inadequate compensation of counsel amounts to the deprivation of the constitutional rights of the criminal defendants represented by inadequately compensated counsel, such courts also face the constraint that appropriating funds is a legislative matter. Id. The court further noted that several State courts have temporarily deferred in the first instance, and only temporarily, to legislative action to ensure that the system for compensation for indigent representation meets constitutional standards. Id. (citing Peart, 621 So.2d at 791; State ex rel. Stephan v. Smith, 242 Kan. 336, 747 P.2d 816, 848-50 (1987) (unconstitutional system of compensation to be remedied by legislative and administrative action); Smith v. State, 118 N.H. 764, 394 A.2d 834, 839 (1978) ("adequate [legislative] appropriations will have to be made in order to comply with this ruling and to ensure the continued functioning of the criminal justice system")).
The Lavallee court also recognized that some state courts of last resort have granted preliminary relief in the form of increased compensation rates, but have simultaneously directed their Legislatures to amend permanently the compensation rates for indigent representation. Id., 812 N.E.2d at 908 (citing State ex rel. Wolff v. Ruddy, 617 S.W.2d 64, 67-68 (Mo.1981) (court established temporary guidelines pending solution); State v. Lynch, 796 P.2d 1150, 1164 (Okla.1990) (guidelines set by court effective until Legislature acts)). Along these lines, a New York trial court recently issued a permanent injunction directing that counsel be paid $90 per hour, and removed the statutory fee cap until the Legislature changed the rates and increased its appropriation for compensation for indigent representation. Lavallee, 812 N.E.2d at 908 (discussing New York County Lawyers' Ass'n v. State, 196 Misc.2d 761, 763 N.Y.S.2d 397 (N.Y.Sup.Ct.2003)). Finally, the court recognized that "[a] spirit of mutual cooperation among the legislative, executive, and judicial departments is unquestionably the people's best guaranty of constitutional government." O'Coin's, Inc. v. Treasurer of the County of Worcester, 362 Mass. 507, 287 N.E.2d 608, 615 (1972).
In contemplating more dramatic action should the need arise, the Court in Peart pointed to cases such as Arnold v. Kemp, 306 Ark. 294, 813 S.W.2d 770, 776-77 (1991) ($1,000 cap on fees constitutionally unacceptable because burden imposed on attorneys was excessive to the extent that it constituted a taking; court also found that system of appointing attorneys, based on where attorney lives and his ability to provide effective assistance of counsel, violated the appellants' right to equal protection); State v. Lynch, supra (applauding pro bono legal representation, court nevertheless holds that "voluntary services are insufficient to accommodate the right of indigent citizens to the effective assistance of counsel"); Stephan, supra, 747 P.2d at 841 (ordering the dismissal of charges against certain defendants if the state cannot make available funds for their defense).
At least one indigent defender has prompted a trial court to take the extreme measure of threatening to hold a legislative body reluctant to release funds in contempt. When Kentucky cut the budget for his office, indigent defender Dan Goyette responded with a corresponding cut in services. Specifically, his office refused to provide attorneys for people facing involuntary mental hospitalization. The chief judge in Goyette's District reportedly ordered the official in charge of the state budget to restore Goyette's funding or face contempt. Other judges in the district ordered the release of four unrepresented persons hospitalized against their will. Abbe Smith, For Tom Joad and Tom Robinson: The Moral Obligation to Defend the Poor, 1997 Annual Survey of American Law 869, 887.
[13] There are time limitations imposed by the Code of Criminal Procedure for bringing indicted defendants to trial. There is no time limitation for the institution of prosecution for first degree murder. La.C.Cr.P. art. 571 ("There is no limitation upon the institution of prosecution for any crime for which the punishment may be death or life imprisonment or for the crime of forcible rape.") However, no trial shall be commenced in a capital case after three years from the date of institution of the prosecution and in other felony cases after two years from the date of institution of the prosecution. La.C.Cr.P. art. 578. Additionally, all defendants have a right to a speedy trial. La. Const. Art. 1, § 16; La.C.Cr.P. art. 701.
[14] Because of "the potential for abuse that an indigent's untrammeled right to funding could create," we have interpreted "adequate funding" to mean that "an indigent is not entitled to funds to provide any evidence or assistance that he wishes, but only those which will provide indigents `an adequate opportunity to present their claims fairly within the adversary system.'" State v. Craig, supra at 446.
[15] Of course, we do not intend to interfere with the defendant's right to a speedy trial.