Judgment rendered November 15, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,433-JAC

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

IN RE: CLEMMIE LEON PORTER, III,
APPLYING FOR THE ADOPTION OF
L.R.C.

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 3652

Honorable Robert Lane Pittard, Judge

* * * * *

| | |
|---|---|
| WEEMS, SCHIMPF, HAINES & MOORE, APLC<br>By: Kenneth Patrick Haines | Counsel for Appellants, Clemmie Leon Porter, III, and Kaitlyn Anne Clark Porter |
| JAMES E. FRANKLIN, III | |
| MADELINE SUE CARBONETTE<br>Assistant Attorney General | Counsel for Appellee, State of Louisiana |
| LAW OFFICES OF J. DHU THOMPSON, APLC<br>By: J. Dhu Thompson | Counsel for Appellee, Cameron Scott Jessup, and Intervenor-Appellee, Stacey Martin |

* * * * *

Before COX, STEPHENS, and ROBINSON, JJ.

**ROBINSON, J.**

Kaitlyn Porter ("Kaitlyn"), the biological mother of the minor child, "LRP" (formerly "LRC" and "LRJ"), and Clemmie Porter ("Clemmie"), the former stepfather and now adoptive father of LRP (collectively, the "Porters"), appeal from a judgment denying the Porters' motion seeking to have La. Ch. C. arts. 1264 and 1267 regarding grandparent visitation rights declared unconstitutional.

For the following reasons, we VACATE AND REMAND.

**FACTS AND PROCEDURAL HISTORY**

Kaitlyn and Cameron Scott Jessup ("Cameron"), the biological father of LRP, were never married. Kaitlyn and Clemmie were married on November 11, 2017. Kaitlyn was granted sole custody of LRP by judgment dated June 21, 2018, when LRP was approximately four years old. The judgment did not allow any visitation by Cameron; however, Cameron's mother, Stacey Martin (formerly "Stacey Jessup") ("Stacey"), was granted two hours per month supervised visitation.

The Porters filed a petition for intrafamily adoption on June 6, 2019. Cameron was incarcerated at the time of trial, but contested the adoption. The adoption trial was held on November 17, 2021. The court ultimately granted the intrafamily adoption, declaring Clemmie to be LRP's legal father. The final adoption decree was initially signed on January 20, 2022, although an amended final decree was issued on February 17, 2022, to correct the rendering date. Neither adoption decree was appealed.

Stacey filed a motion to intervene in the adoption proceeding just prior to trial, on October 26, 2021, seeking visitation with LRP pursuant to La. Ch. C. art. 1264 in the event the adoption was granted. Following the

granting of the adoption, Stacey filed a motion on July 28, 2022, to set her request for visitation for trial. The Porters then filed a motion to declare La. Ch. C. arts. 1264 and 1267 unconstitutional on September 14, 2022, which Stacey opposed.

The trial court ordered the parties to file memorandums in support of their positions on the constitutionality of the referenced statutes, and the matter was submitted on briefs. On May 16, 2023, the trial court issued an opinion and judgment denying the Porters' motion, finding La. Ch. C. arts. 1264 and 1267 to be constitutional because the Porters had failed to meet their burden of proof for establishing unconstitutionality. An order was entered on May 30, 2023, designating the May 16, 2023, decree a final judgment for appeal. The Porters filed this appeal on June 7, 2023.

**DISCUSSION**

La. Ch. C. art. 1264, Post-Adoption Visitation Rights of Grandparents, provides as follows:

> Notwithstanding any provision of law to the contrary, the natural parents of a party who has forfeited the right to object to the adoption of his child pursuant to Article 1245 may have limited visitation rights to the minor child so adopted.

La. Ch. C. art. 1267 establishes the burden of proof for the grandparents' visitation request under art. 1264:

> The grandparents requesting limited visitation rights shall prove both of the following:
>
> (1) That they have been unreasonably denied visitation rights.
>
> (2) That such limited visitation rights would be in the best interests of the minor child.

The trial court allowed the parties to submit briefs on the constitutionality of La. Ch. C. arts. 1264 and 1267. On May 16, 2023, the

2

court issued an opinion and judgment finding the statutes to be constitutional, stating the Porters had failed to meet their burden of proof for establishing unconstitutionality. In its opinion, the court reasoned that "in both [articles], the grandparent can petition for visitation, the adoptive parents can provide a response objecting to visitation by the grandparent, and the trial court can weigh all the factors to come to a conclusion that is in the best interest of the child." To date, there has been no determination regarding the granting of grandparent visitation rights to Stacey, due to the Porters' pending appeal of the trial court's judgment regarding the constitutionality of the referenced statutes.

As a general rule, legislative instruments are presumed to be constitutional; therefore, the party challenging the validity of a legislative instrument has the burden of proving its unconstitutionality. *Louisiana Federation of Teachers v. State*, 13-0120 (La. 5/7/13), 118 So. 3d 1033; *State v. Citizen*, 04-1841 (La. 4/1/05), 898 So. 2d 325. Because the provisions of the Louisiana Constitution are not grants of power, but instead are limitations on the otherwise plenary power of the people of the state, exercised through the legislature, the legislature may enact any legislation that the constitution does not prohibit. *Louisiana Municipal Association v. State*, 04-0227 (La. 1/19/05), 893 So. 2d 809; *Polk v. Edwards*, 626 So. 2d 1128 (La. 1993). Nevertheless, the Porters argue that La. Ch. C. arts. 1264 and 1267 regarding grandparents' visitation rights are prohibited by the constitution.

The Porters argue that La. Ch. C. arts. 1264 and 1267 are unconstitutional as applied in this case because parents have a fundamental right to parent their children without government intrusion, including the

3

right to decide who the children visit during the child's minority. They rely on the U.S. Supreme Court's holding in *Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000), that parents have a fundamental constitutional right to make decisions concerning the care, custody and control of their children and to determine the child's best interests. *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972); *Wisconsin v. Yoder*, 406 U.S. 205, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972); *Quilloin v. Walcott*, 434 U.S. 246, 98 S. Ct. 549, 54 L. Ed. 2d 511 (1978); *Wood v. Beard*, 290 So. 2d 675 (La. 1974). The *Troxel* court called the special interest of a parent to decide their child's best interest, "one of the oldest of the fundamental liberty interests protected by the Due Process Clause of the Fourteenth Amendment." *Troxel*, *supra*; *Cook v. Sullivan*, 20-1471 (La. 9/30/21), 330 So. 3d 152. This finding led the Supreme Court to hold:

> ... so long as a parent adequately cares for his or her children (i.e. is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability that parent to make the best decisions concerning the rearing of that parent's children. *Troxel*, at 530 U.S. 68, 120 S. Ct. 2054.

The law presumes that fit parents make decisions in the best interest of their children. *Id*.; *Parham v. J.R.*, 442 U.S. 584, 99 S. Ct. 2493, 61 L. Ed. 2d 101 (1979). If the parent's decision is to be subjected to any type of state or judicial review, the parent's decision must be afforded some "special weight." *Troxel*, *supra*, at 2062. The decision for whether an inter-generational relationship would benefit a child in any specific case is left first to the parent. *Id*.

La. Ch. Code art. 1267 only requires the grandparent to prove that they have been "unreasonably" denied visitation and that visitation is in the

"best interest" of the child. The Porters claim that La. Ch. C. arts. 1264 and 1267 are unconstitutional because they afford no special weight to a fit parent's decision to deny a former grandparent visitation, in violation of *Troxel*, as evidenced by the language in the trial court's opinion that the determination of whether to grant grandparent visitation is based solely on the "best interest of the child."

Although the court generally possesses the power and authority to decide constitutionality of statutory provisions such as those challenged by the Porters, it is required to decide a constitutional issue only "if the procedural posture of the case and the relief sought by the appellant demand that [it] do so." *State v. Mercadel*, 03-3015 (La. 5/25/04), 874 So. 2d 829, 834; *Ring v. State, DOTD*, 02-1367 (La. 1/14/03), 835 So. 2d 423, 428. A court should avoid constitutional questions whenever the case can be disposed of on non-constitutional grounds. *Mercadel, supra*; *Ring, supra*. Our jurisprudence counsels that the practice of courts is "never to anticipate a question of constitutional law in advance of the necessity of deciding it." *Ring* at 426; *Matherne v. Gray Ins. Co.*, 95-0975 (La. 10/16/95), 661 So. 2d 432, 434. A court must decide the threshold non-constitutional issue of whether the person(s) challenging the provision(s) has standing. *Mercadel, supra*. In order to have standing to challenge the constitutionality of a legal provision, the person bringing the challenge must have rights in controversy, in other words, if the statute seriously affects his or her rights. *Id*.

In *Mercadel*, a defendant was indicted by an Orleans Parish grand jury for first degree murder and pled not guilty. *Id*. Before any hearings took place, the Louisiana Supreme Court, in a separate case, struck down several statutes governing Orleans Parish grand jury proceedings as unconstitutional

local laws. *Id.* Some of the provisions were rewritten or amended, but others were left unchanged. *Id.* The district court specifically found that the defendant had not suffered any real harm as a result of any of the statutes challenged, but still granted the defendant's motion to quash in order to seek guidance from the Supreme Court on the issues. *Id.* The Supreme Court vacated the district court's judgment declaring the statutes unconstitutional and granting the motion to quash, holding that once the district court found that the defendant lacked standing to challenge the statutes, it should have denied the motion to quash. *Id.*

In *Ring*, an Illinois resident operating an eighteen-wheeled vehicle on an interstate highway in Calcasieu Parish was ticketed by the Department of Transportation and Development, Division of Weights and Standards, for failing to stop at a stationary weight enforcement scale, a violation of La. R.S. 32:388. *Ring*, *supra*. The violation carried a $2,000 fine, which Ring was required to pay or face impoundment of his truck and cargo until such time as the fine was paid, pursuant to La. R.S. 32:389. *Id.* Ring paid under protest, then sought administrative review, which was denied. *Id.* Ring filed suit against the State DOTD alleging that La. R.S. 32:388 violated constitutional rights of drivers by depriving them of a substantive property right and liberty interest without notice or opportunity to be heard, for Louisiana drivers in particular since they are not subject to the same requirements. *Id.* He also alleged that the statute failed to provide the drivers a meaningful pre- or post-deprivation hearing prior to the collection of fines or seizure of property, in violation of Due Process rights. *Id.* In turn, the State responded by filing exceptions of prescription and no cause of action. *Id.* The trial court ultimately granted Ring's motion for partial

6

summary judgment rendering the challenged statute unconstitutional, prior to resolution of the State's pending exceptions. *Id.* The Supreme Court held that trial court's judgment was premature because the case was clearly not in a posture to render the issue of the constitutionality of La. R.S. 32:389 ripe for resolution, and Ring would not be significantly injured by failure to decide the constitutional issue at that time since the constitutional challenge may not materialize depending on the resolution of the pending prescription and no cause of action exceptions. *Id.*

In this case, much like in *Ring*, the trial court ruled on the Porters' challenge of the constitutionality of La. Ch. C. arts. 1264 and 1267 prior to the resolution of the underlying cause of action, the determination of whether to grant Stacey grandparent visitation. It declared the statutes to be constitutional, seemingly because no determination had been made at that point as to whether to grant visitation. However, the trial court's reasoning in its opinion essentially translates to a finding that the Porters lacked standing to challenge the constitutionality of the statutes because the matter could still be disposed of on non-constitutional grounds. If the trial court were to ultimately determine *not* to grant visitation to Stacey, then the Porters would not benefit from a judgment determining the statutes to be unconstitutional. In other words, the constitutional challenge may not materialize depending on the resolution of the matter. Therefore, the Porters do not have any rights in controversy sufficient to give them standing to bring this action.

Statutes on their face are presumed to be constitutional. Instead of ruling that the statutes were constitutional as a result of the fact that the underlying action was pending, the trial court should simply have found that

7

the Porters lacked standing to challenge the constitutionality of the statutes at that time and decided the case on the merits. Without a ruling on the merits, neither party suffered any injury and the constitutional challenge is not properly before this Court. An opinion from this Court at this procedural posture of the case would amount to an improper advisory opinion.

## CONCLUSION

For the foregoing reasons, we VACATE AND REMAND the trial court's judgment declaring the statutes constitutional.

**VACATED AND REMANDED.**